**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John William DROSTEN,
Defendant-Appellant.**

**No. 86–3612.**

United States Court of Appeals,
Eleventh Circuit.

June 23, 1987.

Daniel A. Smith, Jacksonville, Fla., for defendant-appellant.

Robert W. Merkle, U.S. Atty., Robert Yerkes, Asst. U.S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before HATCHETT and EDMONDSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this case, we review the district court's application of the "inevitable discovery rule" to evidence law enforcement officers seized during the course of an unlawful entry of the appellant's apartment. Finding no reversible error, we affirm.

### FACTS

On March 13, 1986, an informant, Teaphel McMahon, contacted the Drug Enforcement Administration (DEA) and the Jacksonville Sheriff's Office (JSO) offering information regarding narcotics activity in exchange for assistance in entering a drug rehabilitation program. The law enforcement officers arranged for McMahon to place a telephone call to the appellant, John William Drosten, a/k/a "Colombian John," via a telephone beeper number. McMahon made arrangements with Drosten for purchase of one ounce of cocaine that evening for $1,900.

Robert A. Walsh, a JSO detective, agreed to accompany McMahon to Drosten's apartment so McMahon could introduce Walsh to Drosten and make the purchase using $1,900 of recorded DEA money. McMahon placed a second telephone call to Drosten

and discussed the possibility of a future purchase of a pound of cocaine if the scheduled evening transaction was successful. After Walsh obtained the $1,900 for the drug purchase, McMahon placed a third telephone call to Drosten advising him that they were en route to his apartment. Prior to arriving at Drosten's apartment, and before giving McMahon the recorded DEA money, Walsh searched McMahon to ensure that McMahon did not have any money or contraband in his possession. McMahon's girlfriend was with him from the time he contacted the law enforcement officers until McMahon and Walsh left for Drosten's apartment.

Upon arriving at Drosten's apartment, McMahon spoke with Donald Barrett, an individual he had previously met. Barrett told McMahon that Drosten was not at home, but to call Drosten on the beeper later. Walsh and McMahon went to a telephone booth, and McMahon placed a fourth telephone call to Drosten on the beeper.

Before McMahon went into Drosten's apartment to complete the drug purchase, Walsh conducted a second search. When McMahon returned from the apartment, Walsh noticed that McMahon was under the influence of cocaine. Upon questioning, McMahon denied receiving any cocaine, said he had no money, and insisted that they immediately leave the area. Walsh then conducted a third search of McMahon. During this search, Walsh found an ounce of cocaine and a smaller package of cocaine in McMahon's possession. When Walsh noticed that they were being observed by occupants in Drosten's apartment, by using a small transmitting unit, he told surveillance officers to move in and search the apartment. After announcing their presence, the officers entered Drosten's apartment. They did not have a search warrant nor an arrest warrant. They placed Drosten under arrest. Donald Barrett and Howard Gray, who were inside the apartment at the time of Drosten's arrest, were questioned by the officers.

* The Omnibus Hearing Project is a voluntary discovery procedure, much like a pretrial hearing in a civil case, which was established by

## PROCEDURAL HISTORY

A grand jury indicted Drosten charging him with one count of distribution of cocaine. Prior to trial, Drosten moved to suppress statements and evidence obtained by the officers pursuant to the warrantless entry of the apartment. A United States Magistrate held an evidentiary hearing and recommended that Drosten's motions to suppress be granted. Over the government's objection, the district court adopted the magistrate's report and granted Drosten's motions to suppress.

Thereafter, the government disclosed its intention of calling as witnesses Gray, Barrett, and Rubin Stone. The government also disclosed its intention to introduce the beeper and Drosten's passport into evidence. Stone, a plumber, had leased the beeper for business purposes and had allowed Drosten, his employee, to use the beeper for personal calls on the condition that Drosten pay him the monthly lease payments.

Prior to trial, Drosten filed another motion to suppress, alleging that the testimony of the witnesses and the physical evidence which the government intended to introduce into evidence were obtained as a result of the illegal entry into his residence. The district court denied Drosten's motion to exclude the testimony of Barrett and Gray, allowed Stone's testimony regarding the beeper number, and granted the motion to suppress Drosten's passport and the beeper.

The government and Drosten agreed to participate in the Omnibus Hearing Project.* Pursuant to the agreement, the district court entered an order regulating discovery proceedings and obligations.

At trial, McMahon testified that his girlfriend was present during all of the events preceding the controlled drug purchase and could corroborate his testimony regarding Walsh's search before making the pur-

local rule in the Middle District of Florida in the early 1970's.

chase. Drosten's lawyer moved for a mistrial; he contended that the government's failure to disclose the identity of McMahon's girlfriend or her participation in the case was a violation of the omnibus discovery order. The district court determined that the government had fully complied with the requirements of the order based on the government's representation that it did not intend to call McMahon's girlfriend as a witness; she had no participation in the transaction; and she was not present at McMahon's search just before he entered Drosten's apartment. The district court also found that Drosten was not prejudiced by McMahon's girlfriend's absence from the proceedings.

Thereafter, the jury returned a guilty verdict against Drosten, and the court sentenced him to fifteen years imprisonment.

## DISCUSSION

In this appeal, Drosten contends that the district court erred in refusing to suppress the testimony of Barrett, Gray, and Stone and erred in refusing to grant Drosten's motion for mistrial due to violation of the omnibus discovery order.

### I.

The government argues that the testimony challenged by Drosten was properly admitted into evidence under the "inevitable discovery" exception to the exclusionary rule. Due to the unlawful entry in this case, the government has the burden of showing that the witnesses' testimony inevitably would have been discovered pursuant to lawful means that were actively being pursued prior to the unlawful entry. *United States v. Roper*, 681 F.2d 1354 (11th Cir.1982); *United States v. Brookins*, 614 F.2d 1037 (5th Cir.1980).

In *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377, 387–88 (1984), the Supreme Court adopted and explained the inevitable discovery doctrine: "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means … then the deterrence rationale has so little basis

that the evidence should be received." In *United States v. Satterfield,* this court stated that *"Nix* is not inconsistent with the rule in this circuit that the police must possess and be actively pursuing the lawful avenue of discovery when the illegality occurred." *United States v. Satterfield,* 743 F.2d 827, 847 (11th Cir.1984). Therefore, we are compelled to follow the inevitable discovery rule announced in *Brookins* as adopted by this court in *Satterfield.*

In *Brookins,* the Fifth Circuit expressly stated the burden of proof that the government must satisfy in support of its claim of "inevitable discovery":

> After the accused has challenged the legality of the witnesses' accusations and of the use of witnesses' testimony, the police must show that when the illegality occurred they possessed and were actively pursuing the evidence or leads that would have led to the discovery of the challenged witness and that there was a reasonable probability that the witness would have thereby been discovered. The prosecution must bear this burden of proof on this issue.

*Brookins,* 614 F.2d at 1048. In this case, the district court was required to determine whether a reasonable probability of discovery existed prior to the unlawful conduct, based on the information possessed and investigations being pursued at such time. In reviewing the denial of Drosten's motion to suppress, we must determine whether the district court's ruling constituted an abuse of discretion or was clearly erroneous. *United States v. Gold,* 743 F.2d 800 (11th Cir.1984).

### A. Barrett's Testimony

■ The record indicates that McMahon had informed the law enforcement officers of Barrett's identity and address prior to the unlawful entry. Not only is this sufficient evidence to support the district court's ruling regarding inevitable discovery of Barrett's testimony, but it also satisfies the independent source exception to the exclusionary rule. *United States v. Cotton,* 770 F.2d 940 (11th Cir.1985). Therefore, we hold that the district court

did not abuse its discretion nor commit error in refusing to grant Drosten's motion to suppress Barrett's testimony.

### B. Stone's Testimony

█ Based on our review of the evidence presented by the government at trial, we find it sufficient to support the district court's ruling (and the government's uncontested assertion) that, prior to the unlawful entry, McMahon informed the law enforcement officers of the number to the beeper in Drosten's possession. Also, Drosten has failed to present any evidence to contradict the government's assertion that the name of the pager company and the name of the subscriber inevitably would have been discovered by using the beeper number. Consequently, the government's use of the beeper serial number to identify Stone is of no significance.

In *Satterfield*, we stated that "[u]nder *Brookins* and *Roper*, if evidence is obtained by illegal conduct, the illegality can be cured only if the police possessed and were pursuing a lawful means of discovery at the time the illegality occurred." *Satterfield*, 743 F.2d at 846. In this case, the government possessed information relating to Barrett's identity and address, as well as the beeper number as a direct result of the investigation of Drosten prior to the unlawful entry. Consequently, we find that the government has sufficiently established the element of "active pursuit" under the inevitable discovery rule. *See Brookins*, 614 F.2d at 1044–46.

### C. Gray's Testimony

█ The government contends that the district court properly admitted Gray's testimony under the inevitable discovery rule. The government argues that because the officers were conducting surveillance of Drosten's apartment at the time Gray was present, they would have waited until Gray departed, detained and questioned him, and thereby would have received the substance of his testimony.

Drosten's counter argument notes that the officers were unaware of Gray's presence in Drosten's apartment prior to the unlawful entry. Moreover, the officers had no information relating to Gray's identity, residence, or relationship with Drosten or any other person involved in this investigation prior to the unlawful entry. Drosten argues that the government has failed to satisfy the "active pursuit" element under the inevitable discovery rule. We agree.

Prior to the unlawful entry, the law enforcement officers had no knowledge of Gray's existence and were not pursuing any leads that would have revealed Gray's identity and testimony. The mere surveillance of Drosten's apartment is insufficient to support the government's position relating to the admissibility of Gray's testimony. Thus, we find that the district court erred in failing to grant Drosten's motion to suppress Gray's testimony.

Alternatively, the government contends that because Gray's testimony was purely corroborative and cumulative, the admission of the testimony did not constitute prejudicial error. At trial, Gray testified on direct examination as follows:

Q. Approximately when did you arrive at Drosten's apartment on March 13, 1986?

A. Oh, right in the 7 o'clock, 7, right around 7, something like that.

Q. And you brought Mr. Drosten with you; is that right?

A. Yes, sir.

Q. And what did you do when you arrived?

A. Went upstairs and sat on the couch and was watching the basketball game that was on television.

Q. Who else was present?

A. That gentleman Dunn.

Q. The gentleman that just left the courtroom?

A. Yes, sir.

Q. Was anyone else there?

A. No, sir.

. . . .

Q. After you arrived at the residence of Mr. Drosten that evening, did someone come to see him?

A. Yes, sir.

Q. Could you tell me about that, please?

A. I didn't know the gentleman that came in, and didn't know who he was, and he came in the house, and they walked into the back bedroom, and then that's all, you know.

Q. By they, who walked in the back bedroom?

A. Mr. Drosten and this gentleman that came in who I didn't know.

Q. And you and Mr. Barrett stayed out in the living room?

A. Yes, sir, watching the basketball game.

. . . .

Q. Did you bring any drugs to that apartment that night?

A. No, sir.

Q. Did you see any drugs in the apartment that night?

A. No, sir.

Q. Do you know whether Mr. Drosten and this other individual were involved in a drug transaction?

A. I had no idea that was happening.

The district court erred in admitting Gray's testimony, but we must determine whether such error was harmful and warrants reversal of Drosten's conviction. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). "The purpose of the harmless error rule is to avoid 'setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result.'" *Satterfield*, 743 F.2d at 847 (quoting *Chapman*, 386 U.S. at 22, 87 S.Ct. at 827).

■■ A defendant suffers no prejudice where the court erroneously fails to suppress evidence obtained from an unlawful search which merely corroborates other overwhelming evidence of the defendant's guilt. *Holton v. Newsome*, 750 F.2d 1513 (11th Cir.1985). To determine harmfulness in this case, we must decide whether Gray's testimony corroborated the testimony of Barrett and McMahon. At trial, Barrett testified as follows:

Q. So Mr. Gray and Mr. Drosten came together about 7 o'clock?

A. Yes, sir.

Q. Did you see Mr. McMahon again that evening?

A. Hum, yes, sir.

Q. Tell me about that period.

A. He just came in later, we were—Mr. Gray and I were watching the basketball game, so he came in right after them.

Q. Came what?

A. He came into the house right after John and Mr. Gray came in.

Q. What happened then?

A. I don't know. I was watching the basketball game and he just came in.

Q. What did he do?

A. There was some kind of discussion and then—

Q. Between whom?

A. Mr. Drosten and Mr. McMahon or Teaf.

Q. Where did they go?

A. Into a room off the living room there.

Q. Did they close the door back there?

A. Yes, sir.

. . . .

Q. Did you give Mr. McMahon any drugs that night?

A. No, I didn't.

Q. Did Mr. Gray give Mr. McMahon any drugs that night?

A. I didn't see any drugs anywhere.

Q. Was Mr. Gray with you during the whole time that Mr. McMahon was up on the apartment back in there with Mr. Drosten?

A. Yes.

Barrett's testimony is consistent with and corroborates McMahon's testimony. Thus, Drosten has failed to establish any prejudice resulting from the improper admission of Gray's testimony. Gray's testimony is cumulative. Consequently, we hold that the district court's error in admitting Gray's testimony constituted harmless error. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824.

II.

■ Additionally, Drosten contends that the government violated the omnibus dis-

covery order by failing to disclose the identity of McMahon's girlfriend. We note that the government represented to the district court that it had no reports containing the girlfriend's name, or statements from her, and it did not intend to call the girlfriend as a witness. Additionally, Detective Walsh testified that he searched McMahon just prior to McMahon's entering Drosten's apartment. The girlfriend was not present at this crucial search. The record also indicates that Drosten knew the identity of McMahon's girlfriend, but did not subpoena her for trial. Moreover, the district court found that the government had gone far beyond its requirements in adhering to the omnibus discovery order. Accordingly, we find no merit in Drosten's contention that the government violated the omnibus discovery order.

Accordingly, we affirm the district court's judgment.

AFFIRMED

EDMONDSON, Circuit Judge, concurring:

I concur in the court's judgment and in most of its opinion. Unlike the majority, I believe that Mr. Gray's identity was also inevitably discoverable; consequently, his testimony was properly allowed at trial.

Once the informant McMahon returned from defendant's apartment without the $1,900.00, visibly under the influence of a drug, carrying an ounce of cocaine, and claiming that there was a pound of cocaine in defendant's apartment, law enforcement agents would have surveilled defendant's apartment until Gray came out or until the officers obtained a warrant to enter the apartment. Thus, prior to the supposedly unlawfully entry and search of defendant's dwelling, law enforcement agents had actively embarked on an investigation that would have inevitably led to the discovery of Mr. Gray.