**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ference LANG, Defendant–Appellant.**

**No. 96–10464.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 12, 1998.

Decided July 21, 1998.

Jonathan D. Soglin, Bradford, Vermont, for defendant-appellant.

Mark L. Krotoski, Assistant United States Attorney, Sacramento, California, for plaintiff-appellee.

Before: WALLACE, T.G. NELSON, and KLEINFELD, Circuit Judges.

WALLACE, Circuit Judge:

Lang was convicted of possession of cocaine base (crack cocaine) with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and aiding and abetting the same, in violation of 18 U.S.C. § 2. On appeal, Lang challenges numerous rulings by the district court, including the denial of his motion to suppress evidence taken from the engine compartment of his Chevrolet Blazer. We have jurisdiction over this timely filed appeal pursuant to 28 U.S.C. § 1291. We affirm his conviction, discuss here the denial of Lang's motion to suppress, and address the remainder of his

contentions in a separately filed memorandum disposition.

## I

Lang's conviction was based on crack cocaine found in a cereal box hidden inside the engine compartment of Lang's Blazer. On November 3, 1993, Sacramento Police Officer Brown and Special Agent McCain of the Bureau of Alcohol, Tobacco and Firearms executed a search warrant on Lang's girlfriend's residence. No one was home at that time, but Lang's Blazer was parked in the garage.

Shortly thereafter, Lang and his girlfriend arrived. The agents placed Lang under arrest and searched him, finding, among other things, keys to the Blazer. Without advising Lang of his *Miranda* rights, Brown told Lang that if he did not reveal the location of the narcotics, his girlfriend would also be arrested and their children would be sent to the Sacramento Children's Home. Lang told Brown that the narcotics were in the Blazer. Brown searched the Blazer and found $8,550 in cash in the glove compartment, but did not find any crack cocaine. Brown allegedly reiterated his threat to arrest Lang's girlfriend, and Lang stated that the drugs were in a box in the engine compartment. McCain lifted the hood to the engine and saw the cereal box. Inside the cereal box were three large plastic bags, each containing numerous smaller plastic baggies. Inside each smaller baggie was a piece of crack cocaine, ranging from 5 grams to 24.5 grams.

Lang subsequently brought a pretrial motion to suppress his statements and the narcotics on the ground that they were obtained in violation of his constitutional rights, as he had not been given a *Miranda* warning. The district court conducted an evidentiary hearing and held that the agents' questioning did violate *Miranda* and suppressed Lang's statements. However, the court held that the agents would have discovered the cereal box even in the absence of Lang's statements and thus refused to suppress the drugs.

After trial, Lang brought another motion to suppress, contending that evidence at trial demonstrated that the agents looked in the engine compartment solely because of his statements. The district court held another evidentiary hearing and denied Lang's posttrial suppression motion as well, again on the ground that the agents would inevitably have found the drugs.

## II

At present, our standard of review for a ruling regarding the inevitable discovery doctrine is unsettled. *See United States v. Ramirez–Sandoval*, 872 F.2d 1392, 1399 n. 8 (9th Cir.1989). This case requires that we settle the issue. We must decide whether well-established principles of judicial administration should lead us to conclude that a ruling on whether the inevitable discovery doctrine applies in a given case is to be reviewed de novo or for clear error.

### A.

The issues facing appellate courts typically fall into one of three categories: (1) questions of fact; (2) questions of law; and (3) mixed questions of fact and law. To determine what standard of review to apply, we must first determine into which category inevitable discovery rulings fall.

■ Questions of fact essentially require the establishment of "a recital of external events and the credibility of their narrators." *United States v. McConney*, 728 F.2d 1195, 1200 (9th Cir.1984) (en banc) (*McConney*) (internal quotation marks deleted). We review these questions under a deferential, clearly erroneous standard for a number of reasons, chief among them a recognition that the district court is in a superior position "to judge the accuracy of witnesses' recollections and make credibility determinations in cases in which live testimony is presented." *Id.* at 1201.

■ On the other hand, we review legal questions de novo, that is, independently without deference to the trial court. *Id.* A primary reason for showing no deference on pure legal questions is that appellate judges "are freer to concentrate on legal questions." *Id.* Thus, pure legal questions are ones for which we have an institutional advantage over district courts.

■ Finally, mixed questions of fact and law are those where "the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the [relevant] statutory [or constitutional] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated." *Id.* at 1200, *quoting Pullman–Standard v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). Mixed questions are typically reviewed de novo, but, depending on the nature of the inquiry involved, may be reviewed under a more deferential clearly erroneous standard. *Id.* at 1204.

■ To classify inevitable discovery rulings, we should start with the doctrine itself. In *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) (*Williams*), the Court held that evidence obtained in violation of the Constitution could still be admitted at trial if the government could prove "by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *Id.* at 444, 104 S.Ct. 2501.

### B.

In our view, the issue at hand is a mixed question of law and fact. There is no dispute that Lang, upon being arrested, was questioned without having been advised of his *Miranda* rights. It is also undisputed that the police officers found the cereal box containing crack cocaine as a result of Lang's answers to their questions. The exclusionary rule would require the suppression of the evidence, unless the inevitable discovery doctrine applied. Thus, we are to review the district court's determination that the facts established from the two evidentiary hearings satisfy that doctrine.

■ Application of the inevitable discovery rule as a mixed question of law and fact does not determine our standard of review. To answer that question we must focus "on the nature of the inquiry required when we apply the relevant rule of law to the facts as established." *McConney,* 728 F.2d at 1204. The question before us is not like the exigent circumstances doctrine, application of which

we held would be reviewed de novo because it required the balancing of competing interests. *Id.* at 1204–05. Rather, here the inevitable discovery doctrine is an essentially factual inquiry. Indeed, as the Eleventh Circuit has pointed out, application of this doctrine requires the district court "to determine whether a reasonable probability of discovery existed prior to the unlawful conduct, based on the information possessed and investigations being pursued at such time." *United States v. Drosten,* 819 F.2d 1067, 1070 (11th Cir.1987) (*Drosten*).

■ The Supreme Court has provided important guidance in *Williams* by stating that "inevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment." *Williams,* 467 U.S. at 445 n. 5, 104 S.Ct. 2501. The dispositive question in that case was whether a volunteer search party would have found the victim's body had the defendant not revealed the location due to police misconduct. The Court treated the lower courts' affirmative answer as a finding, *id.* at 448, 104 S.Ct. 2501, not a conclusion of law, and held that "[o]n this record it is clear that the search parties were approaching the actual location of the body, and we are satisfied, along with three courts earlier, that the volunteer search teams would have resumed the search had Williams not earlier led the police to the body and the body inevitably would have been found." *Id.* at 449–50, 104 S.Ct. 2501.

Following the *McConney* analysis and focusing on the inquiry involved, *McConney,* 728 F.2d at 1204, it is clear that the Supreme Court has defined inquiry into inevitable discovery as essentially factual. *Williams,* 467 U.S. at 445 n. 5, 448, 449–50, 104 S.Ct. 2501. The factual nature of the inquiry leads us to hold that inevitable discovery rulings are mixed questions that nevertheless should be reviewed under a clearly erroneous standard.

Our holding is in accord with the Eleventh Circuit, which reviews inevitable discovery rulings for clear error. *See Drosten,* 819 F.2d at 1070. However, it puts us in conflict with the Sixth Circuit, which reviews the question de novo. *See United States v. Kennedy,* 61 F.3d 494, 497 (6th Cir.1995). Like

this circuit, the Sixth Circuit treats inevitable discovery as a mixed question of fact and law. *Id.* Unlike this circuit, the Sixth Circuit reviews all mixed questions de novo, *id.,* whereas we are to apply *McConney*'s functional analysis discussed above to determine whether the inquiry is factual in nature. *McConney,* 728 F.2d at 1204. Thus, because our standard of review analysis is different from the Sixth Circuit, we are satisfied that we should not follow *Kennedy.*

### C.

Therefore, we resolve this appeal under the clearly erroneous standard of review. The district court found that "[b]ased on the training and experience of the officers in searching vehicles for drugs, the Chevy Blazer engine compartment would have been included in the search and the rock cocaine would have been discovered." The court specifically found the testimony of the investigating officers to be credible.

This factual finding is not clearly erroneous. Agent McCain testified that he had been trained to conduct searches of vehicles and that one location narcotics were concealed in was "under the hood or engine compartments." He testified that he had searched at least 100 cars and in at least 50 of those, he had discovered narcotics hidden in the engine compartment. Agent McCain also testified that the cereal box containing the crack cocaine was "immediately apparent" once the hood to the Blazer was lifted. Thus, the district court's finding that the officers would have discovered the crack cocaine even in the absence of Lang's incriminating statement was not clearly erroneous. Accordingly, we affirm the district court's denial of Lang's motions to suppress.

AFFIRMED.