[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-15583

_____

D.C. Docket No. 1:13-cr-20128-CMA-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHAWNTON DEON JOHNSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 2, 2015)

Before WILLIAM PRYOR and JORDAN, Circuit Judges, and JONES,[*] District
Judge.

_____

[*] Honorable Steve C. Jones, United States District Judge for the Northern District of Georgia,
sitting by designation.

WILLIAM PRYOR, Circuit Judge:

This appeal requires us to decide whether to apply the inevitable discovery exception to the exclusionary rule when a police officer illegally discovers evidence that he would have discovered in a later inventory search. When a police officer stopped a truck driven by Shawnton Johnson, the officer checked the license plate for the truck and determined that it was registered to a deceased person. And Johnson admitted that he was driving the truck with a suspended driver's license. The officer then conducted an illegal search of the truck and discovered a sawed-off shotgun. The officer arrested Johnson, performed an inventory search of the truck, and had the truck impounded. Johnson later moved to suppress the shotgun, but the government responded that the shotgun was admissible under the exception to the exclusionary rule for inevitable discovery. The government argued that, because there was no registered owner to whom the officer could have returned the truck, the officer would have discovered the shotgun when he impounded the truck and conducted an inventory search. The district court denied the motion to suppress. Johnson pleaded guilty to one count of felon-in-possession of a firearm, 18 U.S.C. § 922(g)(1), but reserved the right to appeal the denial of his motion to suppress. Because the district court neither

2

clearly erred in its findings of fact nor misapprehended the governing law, we affirm.

## I. BACKGROUND

Officer Brian Gregory of the Miami Gardens Police Department was on patrol in the early morning of October 19, 2012, when he encountered a white Ford truck driven by Johnson. Officer Gregory searched the license plate number on his computer and discovered that the registered owner of the truck was deceased. When the truck failed to signal a turn, Officer Gregory stopped the vehicle.

Officer Gregory asked Johnson for his driver's license; Johnson responded that his license was suspended and instead provided a Florida identification card. Officer Gregory searched Johnson's license history and learned that Johnson's license had been suspended six times and was currently suspended. Officer Gregory issued a traffic citation to Johnson for driving with a suspended license and decided that he would arrest Johnson for the infraction, but Officer Gregory did not perform the arrest then.

Officer Gregory approached Johnson's truck to determine if anyone else was inside. While peering inside the truck, Officer Gregory noticed an item wrapped in a clean white cloth. He removed the cloth and discovered a sawed-off shotgun. Officer Gregory then arrested Johnson.

3

After the arrest, Officer Gregory conducted a detailed inventory search of the truck, including its bed and containers. Officer Gregory also further researched the truck, but he was unable to find another registered owner. About 20 minutes after he inventoried the truck, Officer Gregory completed a vehicle storage receipt and requested that the truck be towed, and marked as the reason "license suspended."

A grand jury indicted Johnson on charges of possessing a firearm as a felon, 18 U.S.C. §§ 922(g)(1), 924(e), and knowingly possessing an unregistered firearm, 26 U.S.C. §§ 5841, 5861(d), 5871. Before trial, Johnson moved to suppress the shotgun as the fruit of an illegal search in violation of the Fourth Amendment. U.S. Const. Amend. IV. The government argued that the shotgun was admissible under the exception to the exclusionary rule for inevitable discovery because Officer Gregory would have discovered it during his inventory search of the truck. At the suppression hearing, the district court heard testimony from Officer Gregory and examined a recording of the incident.

The district court ruled that the initial search of the truck was illegal and that the exception for inevitable discovery did not apply. The district court found that the facts were in "large part" as the government had alleged them, but that Officer Gregory did not know he was going to tow the truck when he first searched it and found the shotgun. The district court found that, at the time of the search, Officer

4

Gregory was still looking for ways to avoid towing the truck. Because the government had not established that Officer Gregory was "actively pursuing" an inventory search, *United States v. Virden*, 488 F.3d 1317, 1323 (11th Cir. 2007), the district court determined that the discovery of the shotgun was not inevitable and suppressed the gun.

The court later granted a motion to reconsider filed by the government. The district court explained that Officer Gregory "confirmed the truck's owner had died . . . , eliminating the possibility of releasing the truck to another person," and that Officer Gregory also "knew the truck could not be released to the Defendant" because his license was suspended. Because "Officer Gregory would of necessity have had to conduct a[n] . . . inventory search," the government had established "a reasonable probability" that the shotgun "would have been discovered other than by the tainted source." *United States v. Brookins*, 614 F.2d 1037, 1042 n.2 (5th Cir. 1980). The district court ruled that the government had "satisfied" the requirement of "active pursuit" and that the evidence was admissible.

Johnson then signed a conditional plea agreement. Johnson pleaded guilty to the charge of felon-in-possession, but he retained the right to appeal the denial of his motion to suppress.

## II. STANDARD OF REVIEW

Two standards govern our review of this appeal. "A ruling on a motion to suppress presents a mixed question of law and fact. We review the district court's findings of fact for clear error and its legal conclusions *de novo*. All facts are construed in the light most favorable to the party prevailing below." *Virden*, 488 F.3d at 1321. And when an argument is first raised on appeal, we review the argument for plain error. *United States v. Clark*, 274 F.3d 1325, 1326 (11th Cir. 2001).

## III. DISCUSSION

We divide our discussion in three parts. First, we explain that the shotgun is admissible under the exception to the exclusionary rule for inevitable discovery. Second, we explain that Johnson's argument that Officer Gregory did not impound the truck on the basis of "standard criteria" fails. Third, we explain that the remainder of Johnson's arguments are meritless.

### A. The Shotgun Is Admissible Under The Inevitable Discovery Exception to the Exclusionary Rule.

The government does not contest that its warrantless search of Johnson's vehicle was illegal, but it argues that an exception to the exclusionary rule allows the admission of Johnson's shotgun. Under the exception for "inevitable discovery," the government may introduce evidence that was obtained by an illegal search if the government can establish a "reasonable probability that the evidence

6

in question would have been discovered by lawful means." *Jefferson v. Fountain*, 382 F.3d 1286, 1296 (11th Cir. 2004). The government must also establish that "the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct." *Id*.

The district court did not clearly err when it found that the government established a "reasonable probability" that the shotgun would have been discovered by lawful means. The district court found that, when the search occurred, Officer Gregory had already discovered that the registered owner of the vehicle was deceased. The district court found that Officer Gregory had already discovered that Johnson's license was suspended and that he could not return the truck to Johnson. The district court found that, although Officer Gregory had not yet determined that he was going to impound the truck when he performed the illegal search, he would eventually have had to impound the truck because there was no one to whom he could have released it. And the district court found that when he impounded the truck, Officer Gregory would have had to perform an inventory search, and he would have discovered the shotgun. The evidence presented at the suppression hearing supports these findings. "Subtract the [illegal search] from the factual picture in this case" and "nothing of substance" would have changed. *Jefferson*, 382 F.3d at 1297.

7

Johnson argues that the government failed to satisfy our test for inevitable discovery because Officer Gregory was not "actively pursuing any lawful means [of discovery] at the time of the illegal conduct," *Virden*, 488 F.3d at 1323, as Officer Gregory had not yet initiated procedures to have the truck impounded and searched. Even if there was a reasonable probability that Officer Gregory would eventually initiate a valid inventory search, Johnson contends that the government still must prove his "plans" to engage in that search. We disagree.

Johnson misunderstands the requirement of "active pursuit." "Active pursuit" does not require that police have already planned the particular search that would obtain the evidence. The government must instead establish that the police would have discovered the evidence "by virtue of ordinary investigations of evidence or leads already in their possession." *Virden*, 488 F.3d at 1323. Officer Gregory's investigation into the ownership of the truck was the "lawful means which made discovery inevitable." *Jefferson*, 382 F.3d at 1296. The "active pursuit" of the "ordinary investigation" of the evidence "already in [his] possession" would have led him to the shotgun.

If we were to rule in favor of Johnson, we would put the government in a "worse position than had the police misconduct not occurred," *Virden*, 488 F.3d at 1322, an outcome that the inevitable discovery exception was fashioned to avoid. The Supreme Court has explained that the "interest of society in deterring unlawful

8

police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse position [than] they would have been in if no police error or misconduct had occurred." *Nix v. Williams*, 467 U.S. 431, 443, 104 S. Ct. 2501, 2509 (1984). Reading the requirement of "active pursuit" to exclude the shotgun would not return the government to the same position it "would have been in," *id.*, because Officer Gregory would have discovered the shotgun in the course of his ordinary investigation into the ownership of the truck.

Johnson's narrow reading of the requirement of "active pursuit" is inconsistent with our precedents. For example, in *United States v. Terzado-Madruga*, the police illegally recorded the defendant's phone call to obtain the identity of a key witness. 897 F.2d 1099, 1114–15 (11th Cir. 1990). We held that the inevitable discovery exception applied because another party, who had agreed to cooperate with police, would have been able to furnish the identity of the witness. *Id*. We did not find it relevant that, at the time of the illegal interrogation, the police were still unaware that the cooperating party would have been able to provide the relevant information. *Id*. Instead, we had "no doubt that the identity of [the witness] would have been discovered by normal police investigation . . . and that the leads making the discovery inevitable were possessed by and being actively pursued by the police prior to the illegal interrogation." *Id.* at 1115. And

9

when our Court first adopted the inevitable discovery rule in *Brookins*, the police had conducted an illegal interrogation of the defendant in which the police learned of a party who would become the "primary witness" for the prosecution. 614 F.2d at 1040. Even though the investigating officers were not yet actively searching for this witness, we held that inevitable discovery applied because the police were investigating other leads that likely would have alerted them to the identity of the key witness. *Id.* at 1048–49. The investigation of these other leads satisfied the requirement of "active[] pursu[it]." *Id.* at 1042 n.2; *see also Jefferson*, 382 F.3d at 1297 (holding that, where defendant's voice was identified by a witness after the defendant was illegally seized, inevitable discovery applied because police were searching for the defendant, and it was "unfathomable that the investigators would not have availed themselves of the various ways in which they could have arranged for [the witness] to listen to [the defendant's] voice," even though police had not yet initiated any of those lawful means).

Our precedents make clear that the purpose of the requirement of active pursuit is to exclude evidence that was not being sought in any fashion. For example, in *United States v. Virden*, police officers stopped the defendant's car, handcuffed him, seized his car, and drove his car to a different location to have drug-sniffing dogs investigate the car. 488 F.3d 1317. Only after the dogs found drugs did the police arrest the defendant. *Id*. at 1320. We held that the exception

10

for inevitable discovery did not apply because there was "no evidence that the [police were] pursuing [the defendant] or his vehicle as part of their ongoing investigation." *Id*. at 1323. Before the illegal seizure, [the defendant] was "completely unknown" to the police, *id*., and the police obtained "no evidence" from the defendant that "could have alerted them" to the presence of drugs. *Id*. at 1320. We held that the "evidence obtained cannot be saved from suppression by the inevitable discovery exception because the police were not engaged in any lawful investigatory activity which would have led to the search of the car." *Id*. at 1324. And in *United States v. Drosden* we excluded the testimony of a witness discovered during an illegal search where the investigating officers had "no information relating to [the witness's] identity, residence, or relationship" with the defendant, they were "not pursuing any leads that would have revealed [the witness]'s identity," and they were "unaware of [the witness]'s presence in [the defendant]'s apartment prior to the unlawful entry." 819 F.2d 1067, 1071 (11th Cir. 1987). To be sure, the officers had the apartment under surveillance even before the illegal search. *Id*. But they were interested in the defendant, not the witness, and the government failed to prove that the officers would have inevitably encountered the witness. *Id*.

Johnson also misreads *United States v. Satterfield* to support his argument that the requirement of "active pursuit" must be construed narrowly. 743 F.2d 827

11

(11th Cir. 1984).  In *Satterfield*, a kidnapping victim escaped her captors and informed police that her captors had committed a murder and that they were hiding in a nearby house. *Id*. at 842–843. Due to the exigent circumstances, police entered the house without a warrant. *Id* at 843. They found Satterfield and his girlfriend in the bedroom, arrested them, and searched the house to confirm that no one else was there. *Id*. The police then took Satterfield and his girlfriend outside and placed them in separate patrol cars. *Id*. The police later reentered the house without a warrant and conducted a more extensive search. *Id.* Approximately ten minutes into that search, the police discovered the shotgun that had been used in the crime underneath the cushion of a sofa in the room adjoining where Satterfield had been arrested. *Id.* We held that the shotgun should be excluded and that the exception for inevitable discovery did not apply, even though the police had probable cause to obtain a valid search warrant at the time of the illegal search. We recognized that the police would have obtained a valid search warrant for the house had they requested one, and that they would have uncovered the shotgun. *Id*. at 845–47. But the government failed to establish that "the lawful means which made discovery inevitable were . . . being actively pursued *prior* to the occurrence of the illegal conduct" because "the [g]overnment had not yet initiated the lawful means that would have led to the discovery of the evidence." *Id.* at 846. We explained that "[t]he [g]overnment cannot later initiate a lawful avenue of obtaining the evidence

12

and then claim that it should be admitted because its discovery was inevitable." *Id*. at 846.

In *Satterfield*, we were concerned with the efficacy of the warrant requirement. "Because a valid search warrant nearly always can be obtained after [a] search has occurred," allowing law enforcement to use a warrant from after-the-fact to justify an earlier search would threaten to vitiate the warrant requirement. *Id*. Any concern about circumnavigating warrants is misplaced here, where no one argues that Officer Gregory would have applied for a search warrant.

Moreover, unlike the police in *Satterfield*, who took no active steps to obtain a warrant, Officer Gregory had taken multiple steps toward establishing that the truck needed to be impounded, before he found the firearm. *See Virden*, 488 F.3d at 1323 (explaining that our decision in *Satterfield* was premised on the fact that the "police had not taken any steps to procure the warrant prior to conducting the illegal search"). In *Satterfield* the police were pursuing only one line of investigation: the warrantless search of the house. The after-acquired search warrant was not a "lawful means which made discovery inevitable," *Jefferson*, 382 F.3d at 1296, because they were not pursuing those means when they searched the house.

Officer Gregory's investigation of the truck began before, and was independent of, his illegal search. "Subtract the [illegal search] from the factual

13

picture in this case" and "nothing of substance . . . would have changed." *Jefferson*, 382 F.3d at 1297. Because the truck was registered to a person who was deceased, Johnson was driving with a suspended license, and the truck could not be turned over to anyone else, Officer Gregory would have impounded the truck and discovered the shotgun through an inventory search. To exclude the evidence would put the government in a "worse position than had the police misconduct not occurred," *Virden*, 488 F.3d at 1322.

### B. Johnson Has Failed to Establish Plain Error Regarding the Absence of "Standard Criteria."

Johnson also argues that, because Officer Gregory did not base his decision to impound and inventory the truck on "standard criteria," no inventory search of the truck would have been lawful, and the inevitable discovery exception cannot apply. *See Colorado v. Bertine*, 479 U.S. 367, 107 S. Ct. 738 (1987). Johnson did not raise this argument in the district court, so we review the argument for plain error. *Clark*, 274 F.3d at 1326. We will find plain error only "where (1) there is an error in the district court's determination; (2) the error is plain or obvious; (3) the error affects the defendant's substantial rights in that it was prejudicial and not harmless; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*; *see also* Fed. R. Crim. P. 52(b). Under review for plain error, the defendant has the burden "to show the error plain, prejudicial, and disreputable to the judicial system." *United States v. Monroe*, 353

14

F.3d 1346, 1349–50 (11th Cir. 2003). Plain error review is meant to cure "obvious injustice." *United States v. Frady*, 456 U.S. 152, 163, 102 S. Ct. 1584, 1592 (1982). Under that standard, Johnson's argument fails.

To be sure, a police officer may only "impound [a] vehicle[] so long as the decision to impound is made on the basis of standard criteria and on the basis of 'something other than suspicion of evidence of criminal activity,'" *Sammons v. Taylor*, 967 F.2d 1533, 1541 (11th Cir. 1992) (quoting *Bertine*, 479 U.S. at 375, 107 S. Ct. at 743), but "standard criteria" need not be detailed criteria. In *United States v. Williams*, for example, we upheld an inventory search where the district court had "indicate[d] that the policy of the Savannah Police Department permitted impoundment under [the] circumstances" and "[t]he defendant [had] not countered this assertion." 936 F.2d 1243, 1248 (11th Cir. 1991). And no Supreme Court precedent "prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Florida v. Wells*, 495 U.S. 1, 3–4, 110 S. Ct. 1632, 1635 (1990) (internal quotation marks omitted).

Johnson has the burden to establish that there was error and that it was plain, and he has not done so. Officer Gregory testified that "it wouldn't be appropriate" to "let Mr. Johnson have a vehicle that didn't belong to him." When asked why it would not be appropriate to return the truck to anyone *other* than Johnson, Officer

Gregory responded: "We're *required* to make our decisions on disposition of vehicles based upon who the owner is of the vehicle." (emphasis added). Johnson's license was suspended and no registered owner was available to take possession of the truck. The district court could have reasonably inferred from Officer Gregory's testimony and common sense that he was acting on the basis of a police policy that ownerless trucks should not be left on the side of the road. Johnson has pointed to no precedent of the Supreme Court or our Court that holds that an officer's testimony, along with reasonable inferences from that testimony, is insufficient as a matter of law to establish that there were "standard criteria" for the decision to impound. *See United States v. Castro*, 455 F.3d 1249, 1253 (11th Cir. 2006) ("When the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." (internal quotation marks omitted)). And Johnson has pointed to nothing in the record that tends to prove that Officer Gregory lacked the authority to impound the vehicle. No plain error occurred.

*C. Johnson's Remaining Arguments Are Meritless.*

Johnson makes several other arguments, but none are worthy of lengthy consideration. We briefly discuss each in turn.

First, Johnson argues that the district court never made a "finding" that Officer Gregory was "actively pursuing leads relating to the ownership of the truck

16

at the time of the search," but in its initial order to suppress, the district court stated that the facts were "in large part" as recounted by the government brief. The only "material exception" was that the district court found that Officer Gregory did not *know* he was going to conduct an inventory search when he illegally searched the truck. But the government proved that, at the time of the illegal search, Officer Gregory had already discovered that the owner of the truck was deceased and that Johnson's license was suspended. When it orally ruled on the motion to suppress, the district court confirmed that Officer Gregory had already discovered that the registered owner of the truck was deceased and that he was wondering what "estate or probate issues" might explain the disposition of the truck. And in its order admitting the evidence, the district court again confirmed that Officer Gregory already knew, before the illegal search, that Johnson's license was suspended.

Second, Johnson argues that Officer Gregory did not follow the inventory search procedures in the Police Department Policy manuals, so the inventory search was not performed pursuant to "standard criteria." Because Johnson did not raise this argument in the district court, we review it for plain error. *Clark*, 274 F.3d at 1326.

Johnson's argument fails. One of the Department manuals states that an officer conducting an inventory search must inventory the entire contents of a vehicle, whether the compartments are "locked or unlocked." Officer Gregory

17

testified that he opened every container he could "get a key to." Johnson argues that Officer Gregory must not have followed the policy if he only opened the containers he could "get a key to," but Johnson has not identified any containers Officer Gregory failed to inventory. And the district court found that the video of the incident "capture[d] Officer Gregory . . . opening all of the closed containers in the bed of the truck." To be sure, Officer Gregory listed one item on the tow sheet as "miscellaneous hand power tools locked in truck box." But Officer Gregory might have opened the box and then relocked it after determining there were "miscellaneous hand power tools" inside. Or Officer Gregory might have been able to inventory the contents of the box without opening it if they were visible from outside the box.  It is Johnson's burden on plain error review to establish that the district court plainly erred, *Monroe*, 353 F.3d at 1349–50, and Johnson has argued only that Officer Gregory might not have opened the truck box. Johnson has not established that Officer Gregory failed to inventory the contents of the box, so Johnson has not established that the district court erred, much less plainly erred.

Finally, Johnson makes two unrelated arguments that he admits are foreclosed by precedent. He argues that the statute that defines his offense, 18 U.S.C. § 922(g), is unconstitutional because it proscribes possession of a firearm without requiring a substantial effect on interstate commerce, but our Circuit has repeatedly upheld section 922(g) against the identical argument. *See United States*

18

*v. Scott*, 263 F.3d 1270 (11th Cir. 2001); *United States v. McAllister*, 77 F.3d 387 (11th Cir. 1996). And Johnson argues that his sentence exceeds the lawful statutory maximum because the indictment did not allege any facts relating to prior convictions and the factual proffer stated only that Johnson had previously been convicted of a felony. But Supreme Court precedent forecloses this argument. *See Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219 (1998).

## IV. CONCLUSION

We **AFFIRM** Johnson's conviction.