[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-13754
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-20998-DMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MAURICE KEVIN ALEXIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 10, 2017)

Before MARCUS, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Maurice Kevin Alexis appeals his conviction for possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On appeal, he argues that the search of a rented Chevrolet Impala he was driving at the

time of his arrest was unlawful, and the discovery of the gun and ammunition did not fall under the doctrine of inevitable discovery.  After careful review, we affirm.

A ruling on a motion to suppress presents a mixed question of law and fact. United States v. Johnson, 777 F.3d 1270, 1273-74 (11th Cir.), cert. denied, 136 S. Ct. 178 (2015).  We review the district court's findings of fact for clear error and its legal conclusions de novo.  Id. at 1274.  All facts are construed in the light most favorable to the party prevailing below.  Id.  We give substantial deference to the district court's credibility determinations with respect to witness testimony.  United States v. McPhee, 336 F.3d 1269, 1275 (11th Cir. 2003).

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV.  Under the exception for "inevitable discovery," the government may introduce evidence that was obtained by an illegal search if the government can establish a reasonable probability that the evidence in question would have been discovered by lawful means.  Johnson, 777 F.3d at 1274.  The government must also establish that "the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct."  Id. (quotation omitted).  "Active pursuit" does not require that police have already planned the particular search that would obtain the evidence.  Id.  The government must instead establish that the police would have discovered the

2

evidence "by virtue of ordinary investigations of evidence or leads already in their possession." Id. (quotation omitted).

Here, the district court did not err by concluding that the gun was admissible under the doctrine of inevitable discovery. As the record reveals, Detective Elizabeth Soler testified that when she stopped the car Alexis was driving for appearing to be illegally tinted, she learned that Alexis had a suspended license and placed him under arrest. Alexis told Soler that he was not on the rental agreement for the car, and disclaimed that two females who arrived later were on the rental agreement. When a third woman, Tarkescha Andrews, arrived, she also disclaimed to Soler that she was on the rental agreement. Luis Cerra, another detective involved in the stop, confirmed that Alexis said he was not on the rental agreement, and did not say who was. Cerra explained that they wanted to know who rented the car so they could avoid having the car towed. In addition, both officers testified that the car was blocking a full lane of traffic on a two-lane road. On this record, we cannot say the district court erred in concluding that no one was available to take possession of the car, and that, just as in Johnson, 777 F.3d at 1274, the towing and subsequent inventory search leading to the discovery of the gun was inevitable.

As for Alexis's claim that the towing was unnecessary because Andrews was present and able to take possession, we disagree. The district court expressly

3

found that "no authorized driver was present and the Impala was in the roadway." In so doing, the court credited Detective Soler's testimony that Andrews failed to assert herself as an authorized driver of the rental car. We give substantial deference to the district court's credibility determinations. McPhee, 336 F.3d at 1275. The record also reveals that Andrews admitted at the hearing that she did not have keys to the Impala at the scene. Whether Andrews sufficiently made clear to the officers that she was an authorized driver capable of taking possession is a question of fact, which we construe in the light most favorable to government as the party prevailing below. Johnson, 777 F.3d at 1274. We cannot say that district court clearly erred in finding that no authorized driver was present at the scene.

Alexis also argues that the towing was unnecessary because the detectives failed to follow department procedures. However, even if the detectives arguably could have done more, they testified that they attempted to find an authorized driver for the vehicle before deciding to have it towed, and were unable to do so. Notably, according to Soler's testimony, Alexis may have named a person, but did not give a name of anyone present; Alexis denied that the two females who later approached the scene were authorized; and Andrews denied being authorized. Since the Impala was blocking traffic, and no one present was authorized to drive it, the officers took lawful steps toward establishing that the Impala needed to be towed, despite any minor deviations from department policy. See id. at 1276-77.

4

In short, we conclude that the district court did not err in holding that the search fell under the inevitable discovery doctrine.  Accordingly, we need not address whether Alexis had standing to challenge the search.  See United States v. Curbelo, 726 F.3d 1260, 1267 & n.3 (11th Cir. 2013) (reaching a dispositive Fourth Amendment issue instead of a standing question that was also raised, and explaining that while "the doctrine of standing as it relates to our jurisdiction under Article III is ordinarily a question we resolve before turning to anything else[,] a person's ability to raise a Fourth Amendment challenge is not a matter of Article III standing, but of substantive Fourth Amendment law" (quotations and citations omitted)).  Accordingly, we affirm.

**AFFIRMED.**