[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14275
Non-Argument Calendar
_____

D.C. Docket No. 0:18-cr-60076-BB-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICHARD SENESE, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 8, 2020)

Before WILSON, BRANCH and MARCUS, Circuit Judges.

PER CURIAM:

Richard Senese Jr. appeals his conviction for attempted importation of a

controlled substance, in violation of 21 U.S.C. § 952.  On appeal, he argues that the

district court erred in applying the inevitable-discovery doctrine and should have suppressed the evidence from the warrantless use of a Global Positioning System ("GPS") tracking device on his vessel because the government did not prove it was "virtually certain" that the evidence would have been discovered absent the unlawful search.  After thorough review, we affirm.

"A ruling on a motion to suppress presents a mixed question of law and fact." United States v. Johnson, 777 F.3d 1270, 1273-74 (11th Cir. 2015) (quotations omitted).  "We review the district court's findings of fact for clear error and its legal conclusions de novo."  Id. at 1274 (quotations omitted).  "All facts are construed in the light most favorable to the party prevailing below."  Id. (quotations omitted).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  If the defendant successfully establishes an expectation of privacy and that a search and seizure occurred without a search warrant, then the burden shifts to the government to prove an applicable exception to the warrant requirement and that the search and seizure was reasonable.  United States v. Bachner, 706 F.2d 1121, 1126 (11th Cir. 1983).  The Supreme Court has held that "the [g]overnment's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'"  United States v. Jones, 565 U.S. 400, 404 (2012) (footnote omitted).

2

"[T]he Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior." United States v. Montoya de Hernandez, 473 U.S. 531, 538 (1985).  Reasonable suspicion, probable cause, or a warrant are not required for a routine search of a person entering the United States. Id.  Any customs officer may at any time go on board any vessel within the customs waters and search the vessel.  See 19 U.S.C. § 1581(a).  The Supreme Court held that customs officers, without any level of suspicion, can remove, disassemble, and reassemble a vehicle's gas tank to look for contraband while the vehicle is located at a secondary inspection station at the border.  United States v. Flores-Montano, 541 U.S. 149, 151, 155 (2004).

As the Supreme Court has explained, the way to ensure the protections of the Fourth Amendment is by suppressing evidence obtained from illegal searches and its fruit, which puts the government in the position it would have been in had the illegality not occurred.  See Nix v. Williams, 467 U.S. 431, 443 (1984).  However, there are several exceptions to this exclusionary rule, including "the inevitable discovery doctrine [which] allows for the admission of evidence that would have been discovered even without the unconstitutional source."  Utah v. Strieff, 136 S. Ct. 2056, 2061 (2016).  The Supreme Court held, in Nix, that for the inevitable discovery doctrine to apply, the government must "establish by a preponderance of the evidence that the information ultimately or inevitably would have been

3

discovered by lawful means." Nix, 467 U.S. at 442-44. "This circuit also requires the prosecution to show that the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct." United States v. Virden, 488 F.3d 1317, 1322 (11th Cir. 2007) (emphasis omitted). "'Active pursuit' does not require that police have already planned the particular search that would obtain the evidence." Johnson, 777 F.3d at 1274. "The government must instead establish that the police would have discovered the evidence 'by virtue of ordinary investigations of evidence or leads already in their possession.'" Id. (quoting Virden, 488 F.3d at 1323).

In Nix, the police and over two hundred volunteers were looking for the body of a missing girl over an area of several miles. 467 U.S. at 435. Groups of volunteers were assigned to defined areas with instructions to check in culverts, among other hiding places. Id. Williams turned himself in, and while transporting him through the area, police appealed to Williams to reveal the location of the body. Id. at 435-36. Eventually, the search was suspended because Williams promised to cooperate, and he directed police to the body, which was in a culvert. Id. at 449. Williams moved to suppress the evidence of the body and all related evidence because it was the product of the officer's statements. Id. at 436-37. After reviewing the evidence surrounding the search, the Supreme Court concluded that the evidence of the body

4

was admissible because the searchers would have inevitably discovered the body without the police misconduct if the search had continued. See id. at 448-50.

Prior to the Supreme Court's decision in Nix, the former Fifth Circuit held in United States v. Brookins that the inevitable discovery doctrine required the government to prove that there was a "reasonable probability" that the evidence would have been discovered by lawful means. 614 F.2d 1037, 1048 (5th Cir. 1980).[1] Following the Supreme Court's decision in Nix, we said that the reasonable probability formulation in Brookins was consistent with Nix and noted that this Court had continued to apply Brookins after Nix. Jefferson v. Fountain, 382 F.3d 1286, 1296-97 (11th Cir. 2004) (applying the reasonable probability standard and concluding that the inevitable discovery doctrine applied because there was "not simply a probability, but a virtual certainty, that" the officers "inevitably would have discovered all the evidence" absent the illegal conduct).

In Virden, the police conducted a Terry stop[2] and placed Virden in a police car in handcuffs without formally arresting him. Virden, 488 F.3d at 1321-22. Without his consent, they drove his car two miles to a canine unit and found cocaine in his trunk. Id. at 1320. He successfully moved to suppress evidence of the cocaine,

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

[2] Terry v. Ohio, 392 U.S. 1 (1968).

and the government appealed. Id. In determining whether the government had demonstrated that the inevitable discovery doctrine applied, we applied the preponderance of the evidence standard from Nix. Id. at 1322. We noted that "neither Virden nor his vehicle were known to the investigation, despite more than [a] year of detective work" and concluded that it was "unlikely that any other future investigation would have discovered precisely this evidence given that vehicles are by nature mobile, and Virden was alerted to the police attention by the initial stop." Id. at 1322-23. We held that "the evidence obtained [could not] be saved from suppression by the inevitable discovery exception because the police were not engaged in any lawful investigatory activity which would have led to the search of the car." Id. at 1324.

In Johnson, the police stopped a truck driven by Johnson and learned that he was driving with a suspended license. 777 F.3d at 1272-73. The officer issued him a traffic citation and decided that he would arrest him for the violation. Id. at 1273. Before arresting Johnson, the officer returned to the truck to see if anyone else was inside and noticed an item wrapped in a cloth. Id. He removed the cloth and discovered a shotgun. Id. At that point, he arrested Johnson and conducted an inventory search. Id. Johnson moved to suppress the shotgun and argued that the government could not rely on the inevitable discovery doctrine to admit the evidence because the officer was not actively pursuing any lawful means when the illegal

6

conduct occurred.  Id. at 1274.  We rejected Johnson's narrow reading of active pursuit, explaining that the purpose of the active pursuit requirement was "to exclude evidence that was not being sought in any fashion."  Id. at 1275.  We noted that the officer's investigation of the truck began before, and was independent of, his illegal search.  Id. at 1277.  Accordingly, we concluded that "[t]he district court did not clearly err when it found that the government established a 'reasonable probability' that the shotgun would have been discovered by lawful means."  Id. at 1274.

"[O]nly the court of appeals sitting en banc, an overriding United States Supreme Court decision, or a change in the statutory law can overrule a previous panel decision."  United States v. Castillo, 899 F.3d 1208, 1214 (11th Cir. 2018), cert. denied, 139 S. Ct. 796 (2019).  A panel cannot overrule a prior panel's holding even if it is convinced that the prior case was wrongly decided.  United States v. Steele, 147 F.3d 1316, 1317-18 (11th Cir. 1998).  "While an intervening decision of the Supreme Court can overrule the decision of a prior panel of our court, the Supreme Court decision must be clearly on point."  United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008) (quotations omitted).

Here, the relevant, undisputed facts are these.  On the morning of February 20, 2018, United States Coast Guard officials encountered Senese aboard his vessel, which was disabled and offshore near West Palm Beach, Florida.  The vessel was towed by a commercial salvage company to a marina, where it was boarded by

7

members of the Coast Guard and officials from United States Customs and Border Protection ("CBP") to conduct an inbound border search of the vessel. The CBP agent also performed a records check, which revealed that the vessel had been seen at a location associated with a known narcotics trafficker, the vessel had been interdicted about a year previously, and its previous owner was a convicted narcotics trafficker. After discovering this information and encountering a variety of irregularities, the agents placed a GPS tracking device on the vessel to determine if it was involved in drug trafficking.

About a month later, on March 18, 2018, using information from the GPS tracking device, a CBP air patrol unit spotted Senese's vessel entering the waters of the United States, and soon thereafter, the vessel again became inoperable and was unable to proceed on its own. When the vessel was located by two CBP marine patrols, the agents observed Senese waving his arms over his head as if calling for help. When asked if he needed a tow, Senese said that he did, because he was broken down, was out of cell phone range, and did not have any way of calling for assistance. Once onboard, agents asked questions regarding the nature of his trip, and according to the agents, Senese provided evasive and inconsistent answers to some of the questions. In a cursory border search of the vessel, the agents also noticed some anomalies about its condition, including loose screws and bolts around the leaning post near the center console and the deck cover, as well as missing and/or

peeled caulking around the deck cover that demonstrated signs of recent tampering. Adding to the agents' suspicion was the overall poor condition of the vessel, which did not seem well-equipped for that type of voyage.

The agents then decided to tow the vessel for further inspection to a dock in Port Everglades and after about a fifteen-minute examination, a narcotics detection canine immediately alerted to the odor of narcotics, and agents uncovered 95 kilograms of cocaine in a hidden compartment of Senese's vessel. Senese ultimately pled guilty to attempted importation of a controlled substance, and was sentenced to 151 months' imprisonment.

In his motion to suppress, Senese sought to suppress all evidence seized following the searches of his vessel, arguing that the Government violated his Fourth Amendment rights against unreasonable searches and seizures by installing a warrantless GPS tracking device on his vessel. While the district court found that the installation of the GPS tracker was separate from the border search and violated the Fourth Amendment, the district court nevertheless denied the motion to suppress because it concluded that the inevitable-discovery exception to the exclusionary rule applied because there was a reasonable probability that the evidence would have been discovered by lawful means. We agree with the district court.

On appeal, Senese begins by arguing that our decisions in Brookins, Johnson, Jefferson and elsewhere that apply the "reasonable probability standard" to the

9

inevitable-discovery doctrine are inconsistent with Nix.  However, even if we were to believe that cases like these wrongly decided the issue, we've specifically held that the reasonable probability standard is not inconsistent with Nix, see Jefferson, 382 F.3d at 1296-97, and we are bound by that conclusion unless it is specifically overruled, which is has not been.  Steele, 147 F.3d at 1317-18.  Additionally, while Senese mentions something called a "virtual certainty" standard, he points to no cases that have actually applied such a standard.  See Jefferson, 382 F.3d at 1296-97 (noting that it was a "virtual certainty" that the evidence would have been discovered but applying the reasonable probability standard).[3]

In any event, even if preponderance of the evidence were the appropriate standard, the district court did not clearly err in finding that the government met its evidentiary burden.  As the record reflects, Senese was already under investigation for drug trafficking, had already been interdicted in the preceding year, and was observed at a residence associated with a drug trafficker -- all of which is evidence

---

[3] Senese also relies on Strieff, where the Supreme Court gave a very brief overview of the three exceptions to the exclusionary rule, noting that the inevitable discovery doctrine "allows for the admission of evidence that would have been discovered."  136 S. Ct. at 2061 (citing Nix, 467 U.S. at 443-44).  However, Strieff involved the "attenuation doctrine," which concerns the admissibility of evidence when "the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained."  Id. (quotations omitted).  Because Strieff addressed the attenuation doctrine, and did not make any holdings concerning the inevitable-discovery doctrine, it does not control here.  Id.; Archer, 531 F.3d at 1352.

that goes well beyond guilt by association. In addition, Senese's vessel was encountered, adrift, in an area with two scheduled marine patrols; the agents did not even need to alter their planned patrols based on the tracker information to encounter Senese's inoperable vessel. The record further reveals that once the agents encountered the inoperable vessel, the discovery of the cocaine was the result of ordinary investigation methods based on his evasive answers, physical irregularities in the boat, and a canine alerting to the odor of narcotics. Indeed, a CBP agent testified that he did not know why the vessel had been flagged when the agents decided to conduct a secondary inspection, indicating that the location data provided by the tracker did not influence his questioning and resulting suspicion of Senese.

Here, unlike in Virden, where the defendant and his vehicle were completely unknown to the police, the marine patrol was familiar with Senese's boat, and the agents had particular, objective reasons to be suspicious of Senese. And in any event, absent any suspicion or warrant, agents could have conducted a routine border search and could have taken it for a deconstructive search at a secondary inspection station. See Montoya de Hernandez, 473 U.S. at 538; see also Flores-Montano, 541 U.S. at 151, 155; 19 U.S.C. § 1581(a). Moreover, the agents towed his inoperable boat to shore at his request, and the canine unit that the agents requested was waiting on them when they arrived at the secondary inspection station. In contrast, in Virden, the vehicle was functional, and without Virden's consent, the police needed probable

11

cause to take his vehicle to the canine unit. 488 F.3d at 1320. Instead, this case is more like Nix, where there was an ongoing systematic search -- volunteers were sweeping the county in Nix and there were routine patrols here -- that would have discovered the evidence absent the illegal conduct. See 476 U.S. at 447-50. On this record, the government met its burden to show by a preponderance of the evidence or reasonable probability that the evidence would have been discovered absent the GPS tracker. See id. at 444; see also Johnson, 777 F.3d at 1274.

As for the second prong of the inevitable-discovery doctrine -- whether the evidence was being "actively pursued" -- Senese's boat was part of an ongoing drug trafficking investigation, had been interdicted twice in the preceding year, and was observed at a residence associated with a drug trafficker. We simply cannot say that the evidence in this case was "not being sought in any fashion." Johnson, 777 F.3d at 1275. On this record, the government also met the "active pursuit" requirement.

In short, because the district court did not err in finding the evidence was admissible under the inevitable-discovery doctrine (regardless of whether the standard of proof was reasonable probability or preponderance of the evidence), we affirm.[4]

**AFFIRMED.**

---

[4] We need not reach whether the installation of the GPS tracker violated the Fourth Amendment because, even assuming arguendo that the installation was unlawful, we affirm based on the district court's application of the inevitable-discovery doctrine.