**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUN 15 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| PETAR MRKONJIC, | No.    16-56335 |
| Plaintiff-Appellant, | D.C. No. 2:15-cv-02255-JAK-JC |
| v. | |
| DELTA FAMILY-CARE AND SURVIVORSHIP PLAN, an ERISA plan; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

| | |
|---|---|
| PETAR MRKONJIC, | No.    16-56487 |
| Plaintiff-Appellee, | D.C. No. 2:15-cv-02255-JAK-JC |
| v. | |
| DELTA FAMILY-CARE AND SURVIVORSHIP PLAN, an ERISA plan; et al., | |
| Defendants-Appellants, | |
| and | |
| DOES, 1-10, inclusive, | |
| Defendant. | |

---

        *     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Argued and Submitted February 14, 2018
Pasadena, California

Before: BERZON and BYBEE, Circuit Judges, and WOODCOCK,[**] District Judge.

This case presents three questions spanning two district court litigations: the proper interpretation of the judgment in the first case, whether an ERISA plan administrator abused its discretion on remand from the district court in implementing that judgment, and whether Mrkonjic is entitled to equitable relief. We conclude that the plan administrator misinterpreted the judgment, that it abused its discretion in departing from its normal practice for calculating benefits, and that in any event, the plan administrator may be equitably estopped from collecting overpayments caused by its mistakes. The parties are familiar with the facts and the proceedings, and we will not state them except as necessary to explain our decision.

**1.** Petar Mrkonjic, a former employee of Delta Air Lines, Inc., brings this appeal as the latest stage of a complicated employee benefits plan dispute that

[**]    The Honorable John A. Woodcock, Jr., United States District Judge for the District of Maine, sitting by designation.

2

traces its origin to a work injury he sustained in December 2003. The first improper denial of Mrkonjic's various claims for benefits occurred in 2005, and controversies between Mrkonjic and Delta's plans persisted for the next thirteen years, including eight years of litigation. Pursuant to the Delta Family-Care Disability & Survivorship Plan ("D&S Plan"), long-term disability ("LTD") benefits are typically offset by any benefits a participant receives from: (1) the Delta Retirement Plan, (2) Social Security disability, and (3) workers' compensation.

Mrkonjic opted to receive early retirement benefits from the Retirement Plan because the Plans wrongfully denied the LTD benefits he sought from the D&S Plan. Later, the Committee deemed him eligible for LTD benefits but subjected him to a variety of offsets including the retirement benefits he had received. Having been declared eligible for LTD benefits, Mrkonjic tried to rescind his early retirement election but was not permitted to do so. Mrkonjic's first lawsuit (*Mrkonjic I*) resulted in a judgment that, among other things, ordered rescission of his early retirement election, required the Committee to recalculate certain offsets, and mandated that the Retirement Plan transfer monies from the D&S Plan Trust to the Retirement Plan Trust.

On remand, the Committee interpreted the judgment to require reimbursement to the Retirement Plan Trust of all Mrkonjic's retirement benefits,

3

and also to require adding up all potentially offsetable outside benefits and subtracting that sum from the gross LTD benefits due Mrkonjic. This recalculation resulted in a substantial amount the D&S Plan owed the Retirement Plan, and the Committee sought to recover this amount by withholding Mrkonjic's LTD monthly benefits.

Mrkonjic challenges the Committee's interpretation of the judgment on two grounds. First, he disputes the Committee's view that the judgment required that he reimburse to the Retirement Plan all the benefits the Retirement Plan paid him. Second, he argues that because the judgment gave no specific instructions on how the calculation of offsets was to be done, it should have been done the way offsets are normally calculated under the D&S Plan. Mrkonjic moved to reopen *Mrkonjic I*, but the district court, with a new judge presiding, denied the motion.

Mrkonjic filed a second case in the district court (*Mrkonjic II*) making similar arguments. The district court rejected Mrkonjic's claims. This appeal followed.

**2.** De novo is the proper standard of review for questions of law, such as the proper interpretation of a judgment. *See United States v. Lang*, 149 F.3d 1044, 1046 (9th Cir. 1998). This Court reviews the Committee's decisions on remand for abuse of discretion, because the Plans assign discretionary authority to the Committee to determine benefits eligibility and construe the Plans' terms. *See*

*Standard Ins. Co. v. Morrison*, 584 F.3d 837, 840 (9th Cir. 2009). At the same time, when an employer controls the plan—rendering the entity determining eligibility and the entity paying benefits one and the same—the resultant "conflict of interest is relevant to how a court conducts abuse of discretion review." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th Cir. 2006). The result is that the abuse of discretion standard becomes less deferential, and this Court reviews the Committee's decisions with "different levels of skepticism on account of conflicts of interest." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 674 (9th Cir. 2011); *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech., Inc.*, 125 F.3d 794, 797 (9th Cir. 1997). Here, Delta appointed the Committee and funds the D&S Plan. An added degree of skepticism is appropriate. *Salomaa*, 642 F.3d at 674.

**3.** The operative language from the *Mrkonjic I* judgment is:

> On remand, the recalculation of offsets must eliminate any offset for the receipt of benefits under the Delta Retirement Plan . . . The amount of the offset for Plaintiff's Delta Retirement Plan benefits that is eliminated shall not be paid to Plaintiff, but shall be transferred from the applicable Trust for the Delta Family-Care Disability & Survivorship Plan to the applicable Trust for the Delta Retirement Plan.

Contrary to the Plans' assertion, this language does not require that Mrkonjic reimburse the Retirement Plan for all benefits he received before the district court granted rescission of his early retirement election. The plain language speaks to

5

transfers of funds—representing offsets eliminated from Mrkonjic's LTD benefit—from the D&S Plan to the Retirement Plan.  But the judgment does not mandate that the transferred amount equal all retirement benefits Mrkonjic had received.  Nor does the *Mrkonjic I* judgment say that the money must come from Mrkonjic.  The plain language of the judgment merely requires transfer from one plan to the other.

4.  "When interpreting an ambiguous prior judgment, the reviewing court should construe a judgment so as to give effect to the intention of the issuing court. Where the judgment is ambiguous or fails to express the rulings with clarity, the entire record before the issuing court and the findings of fact may be referenced in determining what was decided."  *Ruiz v. Snohomish Cnty. Pub. Util. Dist. No. 1*, 824 F.3d 1161, 1167 (9th Cir. 2016) (quoting *Muckleshoot Tribe v. Lummi Indian Tribe*, 141 F.3d 1355, 1359 (9th Cir. 1998)).  The *Mrkonjic I* summary judgment orders shed light on the intention behind the judgment.

5.  The order denying the Plans' motion for summary judgment stated: "[Mrkonjic] is entitled to rescind his early retirement election and to be reinstated subject to appropriate reimbursement and/or offsets of benefits already paid."  The word "appropriate" implies that certain reimbursements and/or offsets might be inappropriate.

6.  The order on Mrkonjic's motion for summary judgment reads:

6

> In determining that Plaintiff should be entitled to rescind his early retirement election, the Court clarified that any rescission of his retirement would be "subject to appropriate reimbursement and/or offsets of benefits already paid." (1/3/13 Order at 15.) Some offsets were contemplated by both the '94 Plan and the '04 Plan, so allowing him both to keep the benefits he received initially and to demand a second set of benefits would provide Mrkonjic with an improper double payment. (Id.) Accordingly, and because the Court has already addressed the issue, Plaintiff's request that the set-off provision be deemed entirely unenforceable must be rejected.

This order clarifies that Mrkonjic was responsible for reimbursing some retirement money but does not address the amount to be reimbursed or how the reimbursement was to take place.

The summary judgment order also provides: "Finally, in order to render a total monetary award as to the disability offsets, the Court would necessarily be required to determine how much [Mrkonjic] has already received in retirement benefits." But again the order does not clarify how the total amount—once ascertained—would figure into a proper LTD recalculation.

Finally, the summary judgment order states:

> The Parties have been unable to agree on a proper method for dealing with some of the more limited benefits he has actually received over the past ten years: whether, and how much, they should be offset against the total now owed him . . . . [T]his Court is not the proper forum to make such a decision in the first instance . . . . [T]he precise amount of benefits due to Mrkonjic is a factual determination related to the implementation of an ERISA plan . . . .

In our view, this language makes clear that the district court did not direct the Plans

7

to make a particular calculation; rather, it ordered the Plans to calculate benefits in accordance with the Plan provisions.

In short, contrary to the Plans' interpretation, this cumulative language establishes that the remand order did not require that Mrkonjic reimburse to the Retirement Plan all retirement benefits he had received. In our view, the Plans' conclusion that the judgment in *Mrkonjic I* required them to treat Mrkonjic in a way different than they would normally do under the D&S Plan was unreasonable and constituted an abuse of discretion.

**7.** The Plans' misinterpretation came at a price for Mrkonjic. On remand, the Plans recalculated Mrkonjic's LTD benefits in a way that varied from their standard calculation method. Normally, for a given month, the Plans subtract all applicable offsets from the LTD benefit. If the offsets exceed the benefit, the claimant receives nothing but does not owe excess offsets back to the Plans. The Plans concede that they calculated Mrkonjic's LTD benefits inconsistently with their normal method. Having concluded that the *Mrkonjic I* judgment did not require the Plans to vary from their typical calculation method or to reclaim all Retirement Plan benefits paid to Mrkonjic as a full credit and withhold the total from future LTD benefits, we turn to the question of remedy.

**8.** Mrkonjic wound up in federal court in the first place because the Plans improperly refused to approve his LTD application. Mrkonjic was forced to elect

8

early retirement solely because the Plans wrongfully denied his LTD benefits. None of these issues would have arisen but for the Plans' error. After rectifying that error, the Plans compounded it. The Plans refused to allow Mrkonjic to rescind his retirement. In this context, because the situation was unique and caused by the Plans, the Plans should have implemented the *Mrkonjic I* judgment so as to leave Mrkonjic no worse off from their mistakes. Instead they accumulated offsets and collected an overage, treating him more poorly than other beneficiaries.

**9.** We remand the matter to the district court to consider the appropriate remedy in light of our holding that the Plans could not require reimbursement of the portion of retirement benefits that exceeded Mrkonjic's monthly LTD benefit amount, and thus should not have withheld Mrkonjic's LTD benefits once his retirement election was rescinded to achieve the reimbursement. The district court should consider whether to remand the matter to the Plans. If the district court elects to remand to the Plans, its remand order should be sufficiently specific so that there is no room for doubt as to what precisely the Plans must do. Alternatively, the district court may wish to exercise its power of equitable relief and fashion an order to cut the Gordian knot of this long-litigated matter.

**10.** We dismiss as moot the Plans' repayment period argument.

**REVERSED.**


FILED

JUN 15 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Mrkonjic v. Delta Family-Care and Survivorship Plan*, Nos. 16-56335, 16-56487
(February 14, 2018 - Pasadena)

BYBEE, Circuit Judge, concurring in the judgment:

I agree with the majority that this case should be remanded to the district court. However, I disagree with the primary reasoning that the Plans and their Committee abused their discretion in requiring Mrkonjic, as part of his "un-retirement," to reimburse the Retirement Plan for the full amount of early-retirement pension benefits he had received. The Committee did not "vary" its method of calculating benefits between the 2007 and 2014 letters; rather, each letter reflects a different objective.

When the Committee wrote to Mrkonjic in 2007 to inform him that he was eligible for retroactive LTD benefits, he was receiving monthly pension payments, Social Security Disability ("SSD"), and workers compensation (collectively "offsets"). Under the Disability Plan's terms, these offsets had to be deducted from his *gross* amount of LTD benefits—a percentage of Mrkonjic's pre-retirement salary—in order to calculate his *net* LTD benefits. This type of offset mechanism prevents an employee from recovering more than his total possible LTD benefits from combined income sources and thus from being given an incentive not to return to work. But an employee does not owe the Disability Plan money when his offsets *exceed* his gross LTD benefits; he is simply owed no

monthly disbursement by the *Disability Plan*. Therefore, only when Mrkonjic's offsets totaled to *less than* his gross LTD benefits—i.e., after the monthly workers-compensation allocation was expended—was he entitled to a monthly disbursement from the Disability Plan.

This calculation, however, says nothing about the Committee's calculations after the *Mrkonjic I* judgment, which required the Committee to allow Mrkonjic to "rescind [his] retirement election and permit him, at a future date, to retire, consistent with the terms of the Delta Retirement Plan . . . ." In order to accomplish this unorthodox objective, funds necessarily had to be transferred between the Retirement and Disability Plans; the former Plan had, for several years, been paying him benefits that should have come from the latter Plan. Thus, in order to return everything to square one, as if Mrkonjic had never been forced to elect early retirement, two things needed to occur: (1) the Disability Plan had to pay him retroactive benefits and (2) Mrkonjic had to reimburse the Retirement Plan using these funds.

Indeed, this is what the *Mrkonjic I* judgment directs. In granting a remand for the calculation of retroactive LTD benefits, the judgment orders that "the recalculation of [LTD] offsets must eliminate any offset for the receipt of benefits under the Delta Retirement Plan" *and* that this offset "shall not be paid to

[Mrkonjic], but shall be transferred from the applicable Trust for the [Disability] Plan to the applicable Trust for the Delta Retirement Plan."

The judgment thus achieves Mrkonjic's unretirement in two steps. First, it directs the Disability Plan to calculate his net LTD benefits as if he never elected early retirement—i.e., by deducting only his SSD and workers-compensation offsets from his gross LTD benefits. Because there would not have been a pension payment to offset if the Committee had correctly paid Mrkonjic LTD benefits from 2004 onwards, this calculation mirrors exactly what his LTD benefits should have been. The second step then reimburses the Retirement Plan by transferring the disregarded pension-payment offsets back to the Retirement Plan. Ultimately, these calculations are precisely what the Committee's 2014 letter reflects.

It should have come at no surprise that Mrkonjic ultimately owed the Retirement Plan a reimbursement. He received nearly twice as much in pension payments over the years from the Retirement Plan than he would have received in combined net LTD benefits that only deducted SSD and workers compensation. Moreover, the Committee illustrated these calculations in its summary-judgment motion during *Mrkonjic I* and warned Mrkonjic that he would end up owing the Retirement Plan money if he sought to unretire. And as the majority acknowledges, the *Mrkonjic I* court "clarified that any rescission of [Mrkonjic's]

3

retirement would be 'subject to *appropriate reimbursement and/or offsets of benefits already paid.*'" The court, however, remanded to the Committee in order for it "to determine how much [Mrkonjic] ha[d] already received in retirement benefits."

Accordingly, when the record and procedural history are considered as a whole, it is evident that the 2007 and 2014 letters reflect incomparable calculations. There is thus no basis for concluding that the Committee abused its discretion.

Nonetheless, I agree with the majority that this case should be remanded in order for the district court to consider applying an equitable remedy. It was the Committee's incorrect interpretation of its own Disability Plan that forced Mrkonjic to opt for early retirement. As a result, he was set to receive little-to-no monthly LTD disbursements when the Committee finally offered him retroactive benefits three years later. He also had no avenue for ever qualifying for a full retirement and thus receiving higher pension payments. Mrkonjic therefore initiated two different federal actions in order to place himself in the position he would have been in fourteen years ago, but for the Committee's erroneous denial of LTD benefits.

Mrkonjic has consistently argued over the years that these circumstances

4

justify the application of equity to prevent the Committee and Plans from recouping their overpayments. He has supported this contention with relevant authorities that neither district court addressed. I would therefore remand this case only for the purpose of allowing the *Mrkonjic II* court to consider in the first instance whether an equitable remedy is warranted.