UNITED STATES of America, Plaintiff-Appellee,

v.

Mark PIROLLI, Defendant-Appellant.

No. 81–5225.

United States Court of Appeals, Eleventh Circuit.

April 23, 1982.

Rehearing Denied June 21, 1982.

Sandstrom & Haddad, Fred Haddad, Fort Lauderdale, Fla., for defendant-appellant.

Bruce A. Zimet, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before TUTTLE, KRAVITCH and JOHNSON, Circuit Judges.

TUTTLE, Circuit Judge:

This is an appeal from a conviction of Mark Pirolli of five counts charging the violation of various statutes relating to his possession and dealing in cocaine. He was convicted of violating Title 21 U.S.C. § 846 (conspiracy to distribute cocaine—count I); Title 21 U.S.C. § 841(a)(1) (possession with intent to distribute cocaine—counts II, IV and VI); Title 21 U.S.C. § 841(a)(1) (distribution of cocaine—counts III and V). He was sentenced to five years incarceration and a three year special parole term as to each count of his conviction. The sentences run concurrently with each other.

The facts were largely stipulated for trial. Pirolli met with undercover drug enforcement administration special agent Perry on November 29, 1979 at the Pompano Beach, Florida home of defendant Eileen Newberry. The purpose of this meeting was to finalize the details of a several kilogram cocaine transaction. Newberry had previously met with Agent Parsons two days earlier in Fort Lauderdale, at which time Newberry discussed the availability of the desired cocaine. During such discussion, according to Parsons' testimony at the trial, the following occurred:

> Well, we discussed her source of supply, who she identified as Mark. She said that Mark had profited a great deal from cocaine trafficking; that he had invested some of his money in real estate and he had lived approximately 10 or 15 minutes away from her residence.

Consistent with Newberry's statement to Parsons about what would happen, the appellant arrived at Newberry's house on November 29 and provided Perry with a sample of cocaine which Perry tested and discussed with appellant. Following additional negotiations, appellant Perry agreed upon the method of completing the transaction. He retained custody of the cocaine sample and later it was introduced into evidence in connection with counts II and III of the indictment.

The plan agreed upon between Pirolli and Perry provided that Special Agent Parsons was to receive delivery of the cocaine at Newberry's house from Pirolli's representative, while at a separate location the purchase money would be provided by Agent Perry to another one of Pirolli's representatives. After the latter arrived at Newberry's residence and delivered a bag of sugar to test out whether Parsons was "for real" or was a special agent, and Parsons passing that test, Mariotti placed a telephone call, whereupon Pratt, another member of the conspiracy, arrived at the Newberry house and delivered approximately one kilo of cocaine to Agent Parsons. This cocaine was introduced in support of counts IV and V of the indictment. At that time, Mariotti, Pratt and Newberry were arrested. During conversations with Newberry, Perry had noted the telephone number which she had dialed to reach Mark, who by this time had been identified as Pirolli and had been arrested. Thereupon, the agents went to the residence at which a telephone with the observed number was installed. As the agents moved towards this residence, Agent

Bachman heard a door slam at the rear of the house. He then knocked on the door, but received no response. He walked around the house, looked in the living room window, but did not find Pirolli. In the meantime, another agent saw Pirolli walking down the street away from the house, recognized him and arrested him. Thereafter, the agents entered the house and searched it without a warrant. The trial court excluded all evidence of what had been found in the house.

The following stipulation deals with one of the two more important questions raised on appeal:

Agent Bachman and other agents, without defendant Pirolli who was being held in the agent's car, then went into the premises at 1801 Northeast 53rd Street, and Agent Bockman went out into the rear yard. Over the fence on the outside thereof and in the public domain, he noticed three vinyl, plastic or leather bags (two black bags together and one tan bag which was about five feet therefrom. The tops of the two black bags were ajar. Their zippers were not closed. The tan bag was zippered.

Agent Bachman went over the fence and picked up the bags. In one black bag there were numerous documents as well as a wallet. In the second bag were coffee filters. In the third bag (the one which was zippered) he found a bag wrapped with masking tape which appeared to be wrapped in the same manner as the package delivered earlier that evening to the residence in Pompano Beach. Agent Bachman saw no one outside the fence.

Agent Bachman brought the three bags back to the car where Mark Pirolli was being held, and said, "Look what I found." Pirolli replied, "I never saw them before in my life." The group then entered the house.

Later, Mark Pirolli was brought to the Pompano Beach Police Station for processing: As Agent Bachman was showing to the processing police officer the wallet and driver's license which had been found in one of the two black bags, Mr. Pirolli said, "Gee, you found my wallet. Thanks."

On December 4, 1979, about four or five days after Mark Pirolli's initial appearance before U. S. Magistrate, Patricia J. Kyle, and after Mr. Pirolli was represented by counsel, defendant Pirolli called Agent Bachman asking for his property back. Agent Bachman asked Mr. Pirolli a number of questions. Agent Bachman, at that time, did not advise Mark Pirolli of his *Miranda* rights.

Agent Bachman made a report of his conversation which report has been submitted to counsel for defendants. A copy is attached hereto.

In addition to these stipulated facts the record disclosed that Bachman opened the black bag and found Pirolli's driver's license and some photographs. He also opened the tan valise where he found a small package wrapped in masking tape. A field test was made of the contents of the package, which showed the presence of cocaine. The telephone call made by Pirolli to Agent Bachman expressly included a request for the return of the tan bag which contained the package of cocaine.

The principal contentions of the appellant here are that it was error for the trial court to admit the statement made by Mrs. Newberry and that the court erred in admitting in evidence the cocaine found in the tan bag.

## I. THE NEWBERRY STATEMENT

■ The trial court admitted the statement by Mrs. Newberry on the ground that it was part of the *res gestae*, that is to say, it was part of the discussion that led up to the agreement between Pirolli and the agent to sell at least one kilo of cocaine. As pointed out by the United States, there was some discussion as to the availability of the drug at the time and place that the discussions were taking place. It is clear from the evidence that there was sufficient proof that a conspiracy existed between Newberry and Pirolli and others involving the sale of the cocaine. Thus, the state-

ment she made as to the activities of Pirolli in earlier transactions, as an indication of his ability to carry out his agreement to sell in this instance, was relevant for the jury's consideration as to the existence of the conspiracy. This was merely some of the language that was used in the setting up of the deal and it was a statement by a coconspirator at a time when there was ample evidence of its existence. Both Pirolli and Newberry were members of the conspiracy. There is no *James* problem here. *U. S. v. James*, 590 F.2d 575 (5th Cir. 1979) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). Nor is there any violation of Federal Rules of Evidence 404(b) which states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

As we have pointed out this testimony was part of setting up the actual deal as a part of the conspiracy. It also was relevant to the issue of the defendant's knowledge from his "familiarity with illicit drugs," *U. S. v. Contreras*, 602 F.2d 1237, 1240 (5th Cir. 1979), *cert. denied*, 444 U.S. 971, 100 S.Ct. 466, 62 L.Ed.2d 387 (1979).

Without expressly citing section 403 of the Federal Rules of Evidence, appellant contends that: "The prejudice resulting from the admission of Mrs. Newberry's assessment of Mr. Pirolli far outweighed the probative value of such evidence," citing *United States v. Burkley*, 591 F.2d 903. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

This rule is to give a trial court the opportunity by the exercise of its discretion to exclude evidence, although otherwise entirely admissible in the stated circumstances. It is stated as an exception to Rule 402 which says:

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. . . .

The application of Rule 403 should be sparing, as stated by the Court of Appeals for the Fifth Circuit: [1]

> Relevant evidence is inherently prejudicial but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits the exclusion of relevant matter under Rule 403. Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of a prejudicial effect. As to such, Rule 403 is meant to relax the iron rule of relevance, to permit the trial judge to preserve the fairness of the proceedings by exclusion despite its relevance. . . .

*United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979).

In light of the exceptionally strong case of Pirolli's criminal activities in this case, we have no difficulty in concluding that Rule 403 should not apply.

## II. SEARCH OF THE BAGS

 As is shown by the stipulation of the parties, Agent Bachman and other agents went onto the premises at 1801 Northeast 53rd Street "and Agent Bachman went out into the rear yard. Over the fence on the outside thereof and in the public domain he noticed three vinyl, plastic or leather bags (two black bags together and one tan bag which was about five feet therefrom)." Although not precisely stated, it seems apparent that Agent Bachman first saw the three bags from where he was standing within the curtilage, after Bachman had walked through the house, which he had entered without a warrant: The magistrate suppressed the evidence as to articles found within the house, but concluded that the contents of the bag should not be suppressed, because Agent Bachman testified that, in any event, he would have

1. We are bound by decisions rendered by the Court of Appeals for the Fifth Circuit before the close of business on September 30, 1981.

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

walked around the premises and have seen the bags lying outside of the yard belonging to 1801 Northeast 53rd Street. We should make it plain that the bags were not within the curtilage. The United States contends that these bags had been abandoned by the owner, as indicated by the conversations between Pirolli and the agents as they were driving back towards the house after Pirolli's arrest. Pirolli asked: "Where are we going? Who lives here." Then, after Bachman brought the three bags back to the car where Pirolli was being held, he said: "Look what I found." Pirolli replied: "I never saw them before in my life." Any contention by Pirolli that these bags were not abandoned, under these circumstances, would be frivolous. The Court of Appeals for the Fifth Circuit in *U. S. v. Colbert*, 474 F.2d 174 (5th Cir. 1973) (en banc) stated: "Abandonment is primarily a question of intent, and may be inferred from words spoken, acts done and objective facts." 474 F.2d at 176. Thus, the critical issue is, as stated in *Colbert* "whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." *Id.* Courts, have, of course, found that abandonment may not be voluntary if it is merely the product of police misconduct. *See U. S. v. Lara*, 638 F.2d 892, 895 (5th Cir. 1981). Appellant contends that the abandonment by Pirolli was caused by the illegal conduct of the agents, when they made the illegal search of the house. This does not, however, fit within the facts, since at the time Pirolli was heard slamming the back door to the house the agents had not yet knocked on the door to seek admission. Nothing they had done thus far was illegal. The fact that Pirolli abandoned the articles in an effort to evade his being caught with them does not amount to his abandonment being the product of police misconduct. *United States v. Bush*, 623 F.2d 388 (5th Cir. 1980). Moreover, any argument that the discovery and search of the bags were fruits of the illegal entry into the residence, cannot prevail. Whatever illegality may have resulted in the search and seizure of the bags was fully attenuated by Pirolli's voluntary abandonment of that evidence. The Court of Appeals for the Fifth Circuit has said:

> To be sure, the voluntary abandonment of evidence can remove the taint of an

illegal stop or arrest, *see United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973) (en banc).

*United States v. Santia-Manriquez*, 603 F.2d 575 (5th Cir. 1979).

## III. SUFFICIENCY OF THE EVIDENCE AS TO COUNT VI

■ Appellant contends that there was insufficient evidence to connect him with the tan bag which was found near the residence and which contained the package of cocaine. His contention might be available to him but for the telephone conversation which was made several days after the arrest. During that conversation Pirolli asked about the whereabouts of his personal belongings. He specifically remarked about the two bags Special Agent Bachman seized the night Pirolli was arrested. Bachman reminded Pirolli that he had disclaimed any knowledge of those bags that night. Pirolli then stated he meant only the tan valise which Bachman had. The tan valise contained Exhibit 5, the cocaine, at the time it was picked up by agent. This conversation between Pirolli and Bachman was after Pirolli had a lawyer representing him, and the conversation was, of course, initiated by Pirolli.

Under these circumstances, it is clear that there was sufficient evidence to support the conviction of count VI of the indictment dealing with the package of cocaine contained in the brown valise.

## IV. SPEEDY TRIAL ACT

■ Appellant's reliance upon the Speedy Trial Act for his right to have his indictment dismissed is unavailing. In an amendment to the Act, before its first effective date, the sanction provisions became "effective and apply to all cases commenced by arrest or summons and all informations or indictments filed on or after July 1, 1980." Since this case was filed more than a year previous to that date, the sanctions contained in the amended Act do not apply.

The judgment is AFFIRMED.

On Rehearing

PER CURIAM:

Appellant's petition for rehearing complains of the statement by the Court in the part of the opinion denominated "Sufficiency of the Evidence as to Count IV." *Supra* at 1204 (11 Cir.). Appellant contends that the conversation between Pirolli and the

agent was "never admitted at trial as evidence." Although we did not, in the opinion, state that this conversation was "admitted as evidence," we did run verbatim the stipulation which dealt with the conversation. That stipulation stated: "Agent Bachman made a report of his conversation which report has been submitted to counsel for defendants. A copy is attached hereto." The content of Bachman's conversation with Pirolli was therefore stipulated to, and thus was no longer an issue in the case. Moreover, it appears that Pirolli's counsel recognized the sufficiency of the evidence connecting Pirolli with the tan suitcase when, in his argument to the jury, he stated: "Now, we have some circumstances there, granted. We have Pirolli's valise, his own suitcase is found within 10 to 12 feet away, as Agent Bachman testified to. . . ." With this concession by Pirolli there can, of course, be no doubt about the sufficiency of the evidence to sustain his conviction.

The petition is DENIED.