[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 12 2007
THOMAS K. KAHN
CLERK

_____

No. 06-12279

_____

D. C. Docket No. 05-00022-CR-CDL-4

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

ERIC VIRDEN,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(June 12, 2007)**

Before EDMONDSON, Chief Judge, BIRCH and WILSON, Circuit Judges.

WILSON, Circuit Judge:

The government appeals the district court's grant of Eric Virden's motion to suppress evidence obtained from the search of his rental vehicle. The government argues that the district court erred in concluding that (1) the seizure of Virden's vehicle violated the Fourth Amendment and (2) the inevitable discovery doctrine did not apply. After carefully reviewing the record and having had the benefit of oral argument, we affirm.

## BACKGROUND

On May 4, 2005, police and DEA investigators planned to execute search warrants on nine properties located in Columbus, GA, including a residence on 17th Avenue. These properties were associated with Michael Adams, the target of a year-long drug investigation. In preparation, officers kept the locations under surveillance beginning in March 2005.

On the morning of May 4, a deputy observed a Buick LeSabre exit the garage of the 17th Avenue location. An unmarked police car followed the LeSabre to a gas station, and officers watched the driver as he entered the store and made purchases. Upon the driver's exit, officers approached him, asking him to remain there so that he could be questioned by another officer. Sergeant Stinson, who had been conducting surveillance at another location, arrived at the gas station, frisked the driver, and obtained the driver's identification. Sgt. Stinson also advised the

2

driver of the ongoing drug investigation. The driver identified himself as Eric Virden and produced proper identification. Upon questioning, Virden asserted that he had been leaving a girl's residence on 22nd or 23rd Street, but he also indicated that he was from out of town and not familiar with the area. Officers also learned that the car was a rental vehicle. At the gas station, officers obtained no evidence from Virden that could have alerted them to the presence of drugs. Prior to this date, both Virden and the LeSabre were unknown to the investigation.

While in route to the gas station, Sgt. Stinson had requested that the canine unit meet him at the gas station to perform a drug sniff. While questioning Virden, officers learned that the investigation's main target, Adams, was nearby, and Stinson could see Adams' vehicle from where he was located. Worried that Adams would detect their presence, Stinson decided to place Virden in the car to conceal him. Without placing Virden under arrest, the officers placed Virden in handcuffs in the back of the police vehicle. When placing Virden in the police car, Stinson still thought a canine unit would be able to meet him at the gas station. Shortly thereafter, however, he learned that the canine unit was unavailable to meet them because the unit was assisting in the stop of Adams a few miles away on Beaver Trail Road. Sgt. Stinson decided to take Virden's vehicle to Beaver Trail so the dog sniff could be performed there. Stinson took Virden's keys, and,

3

without Virden's consent, drove Virden's rental vehicle approximately two miles to the Beaver Trail location. The other officers transported Virden to the Beaver Trail location in the back of the police car.

At Beaver Trail, the trained drug dog performed a sniff, alerting to the trunk and rear passenger compartment. An agent then opened the trunk of the car, where he recovered drugs. Virden was then placed under arrest. Stinson estimated that the entire encounter lasted between 20 and 30 minutes.

Adams and Virden were charged with possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii)(II), and possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vii). Virden filed a motion to suppress the evidence found on his person and in his trunk after the dog sniff. The district court granted the motion in part, suppressing only the evidence from the car. *United States v. Virden*, 417 F. Supp. 2d 1360, 1372 (M.D. Ga. 2006). The district court found that there was no probable cause to believe Virden was committing a drug crime, and therefore there was no probable cause to search Virden's vehicle for contraband, and no exceptions to the probable cause rule applied. *Id.* at 1369-72. Following the government's motion for reconsideration, the district court also found that the inevitable discovery doctrine was inapplicable given the facts. *United States v.*

4

*Virden*, 422 F. Supp. 2d 1376, 1378 (M.D. Ga. 2006). The government now appeals both rulings.

## STANDARD OF REVIEW

A ruling on a motion to suppress presents a mixed question of law and fact. *United States v. Zapata*, 180 F.3d 1237, 1240 (11th Cir. 1999). We review the district court's findings of fact for clear error and its legal conclusions *de novo*. *Id.* All facts are construed in the light most favorable to the party prevailing below. *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000) (citation omitted).

## DISCUSSION

First, we determine whether moving the vehicle to Beaver Trail constituted a seizure which required probable cause. If so, we must decide whether there was sufficient probable cause to support a seizure. Finally, we consider the application of the inevitable discovery exception to the exclusionary rule.

Sergeant Stinson's moving of Virden's vehicle without his permission was a seizure that exceeded the bounds of a *Terry* stop. A seizure occurs when there is a meaningful interference with a person's possessory interest in property. *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S. Ct. 1652, 1656, 80 L. Ed. 2d 85 (1984). The bounds of investigative detention of personal property are defined by the limits applicable to the detention of a person. *United States v. Place*, 462 U.S.

5

696, 708-09, 103 S. Ct. 2637, 2645, 77 L. Ed. 2d 110 (1983). Under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) and its progeny, an investigatory detention can be supported by reasonable suspicion; however, an arrest, i.e. the seizure of a person, must be supported by probable cause. Therefore, the factors used to determine whether a *Terry* stop has matured into an arrest are also useful in evaluating whether a seizure of property required probable cause. The non-exclusive factors we consider in evaluating the reasonableness of a *Terry* stop are: "'[1] the law enforcement purposes served by the detention, [2] the diligence with which the police pursue the investigation, [3] the scope and intrusiveness of the detention, and [4] the duration of the detention.' " *United States v. Acosta*, 363 F.3d 1141, 1146 (11th Cir. 2004) (citations omitted).

The seizure here was unreasonable absent probable cause because of its scope and intrusiveness. While not unduly lengthy, the seizure was accomplished by the taking of Virden's vehicle to a new location for the purposes of investigation. We have frowned upon the movement of individuals for such purposes. *See United States v. Hardy*, 855 F.2d 753, 760-61 (11th Cir. 1988); *Hayes v. Florida*, 470 U.S. 811, 816, 105 S. Ct. 1643, 1647, 84 L. Ed. 2d 705 (1985) ("[O]ur view continues to be that the line is crossed when the police, without probable cause or a warrant, forcibly remove a person from his home or

6

other place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes."). Furthermore, to effectuate this seizure the officers handcuffed Virden, and without formally arresting him, drove him to another location. Such a seizure exceeds the boundaries of a *Terry* stop.

Even so, Virden's vehicle could be lawfully seized if probable cause existed. The Fourth Amendment only prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Ordinarily, the seizure of personal property is *per se* unreasonable unless the seizure is pursuant to a warrant issued upon probable cause. *Place*, 462 U.S. at 701, 103 S. Ct. at 2641. However, the search and seizure of vehicles without a warrant is permissible when the police have probable cause to believe a vehicle contains contraband. *United States v. Watts,* 329 F.3d 1282, 1285 (11th Cir. 2003)(per curiam); *United States v. Holloman*, 113 F.3d 192, 195 (11th Cir. 1997)(per curiam). Probable cause exists when there is "a fair probability that contraband or evidence of a crime will be found." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989)(quotation marks and citation omitted).

The officers lacked the requisite probable cause to seize Virden's car while at the gas station. At the time of the seizure, the officers were aware of the

7

following suspicious facts about Virden: (1) he left a location of suspected drug activity, (2) he appeared to have control over the garage because the garage door closed without anyone else being seen, and (3) he misstated exactly where he had been to the police. However, neither Virden nor his vehicle were known to the investigation, despite more than year of detective work. *Cf. United States v. Tamari*, 454 F.3d 1259, 1262-64 (11th Cir. 2006) (finding probable cause exists where driver arrives on rural scene of drug activity driving a vehicle associated with the head of the drug conspiracy). Additionally, we have consistently held that mere presence at a crime scene without more is insufficient to establish probable cause. *Holmes v. Kucynda*, 321 F.3d 1069, 1081 (11th Cir. 2003). Without more, the facts in the officers' knowledge at the time of seizure were insufficient to give rise to probable cause.

Having concluded that the seizure was unlawful, we now consider whether the prosecution was entitled to use the evidence against Virden because the inevitable discovery exception to the exclusionary rule applied. The exclusionary rule serves to deter police misconduct by preventing the introduction of evidence obtained through police illegality. *Nix v. Williams,* 467 U.S. 431, 442-43, 104 S. Ct. 2501, 2508, 81 L. Ed. 2d 377 (1984). Without the rule, the constitutional protections against search and seizure are meaningless. *Terry v. Ohio*, 392 U.S. 1,

12, 88 S. Ct. 1868, 1875, 20 L. Ed. 2d 889 (1968). However, because this rule sometimes results in the high social cost of allowing guilty persons to go unpunished, it has been tempered with exceptions that apply where the deterrence rationale has little basis. *See Nix*, 467 U.S. at 443-444, 104 S. Ct. at 2509. Under the exceptions, the government is left in no worse position than had the police misconduct not occurred. *Jefferson v. Fountain*, 382 F.3d 1286, 1295 (11th Cir. 2004).

Under the inevitable discovery exception, if the prosecution can establish by a preponderance of the evidence that the information would have ultimately been recovered by lawful means, the evidence will be admissible. *Nix,* 467 U.S. at 434, 104 S. Ct. at 2509. However, the mere assertion by law enforcement that the information would have been inevitably discovered is not enough. *United States v. Brookins*, 614 F.2d 1037, 1048 (5th Cir. 1980).[1] This circuit also requires the prosecution to show that "the lawful means which made discovery inevitable were being *actively pursued* prior to the occurrence of the illegal conduct." *Jefferson*, 382 F.3d at 1296 (emphasis added). This second requirement is especially important. Any other rule would effectively eviscerate the exclusionary rule,

---

[1]Decisions of the Fifth Circuit rendered on or before September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

because in most illegal search situations the government could have obtained a valid search warrant had they waited or obtained the evidence through some lawful means had they taken another course of action. *United States v. Hernandez-Cano*, 808 F.2d 779, 784 (11th Cir. 1987).

The Supreme Court first endorsed the inevitable discovery exception in *Nix v. Williams*, holding that evidence of the location and condition of a murder victim's body was admissible, even though it was learned through an illegal interrogation of the defendant, because search parties were already conducting systematic searches in the area near the body. 467 U.S. at 448-450, 104 S. Ct. at 2511-2512. Finding this ruling consistent with the "active pursuit" requirement we articulated in *Brookin*s, we have continued to strictly apply this requirement. *Jefferson*, 382 F.3d at 1296. For instance, in *United States v. Satterfield*, we found it was error for a district court to admit evidence where police conducted an illegal search of a defendant's home prior to obtaining a search or arrest warrant. 743 F.2d 827, 846 (11th Cir. 1984). While police had sufficient probable cause to obtain a search warrant at the time of the search, and even later obtained a search warrant for the property, we held that inevitable discovery did not apply because the police had not taken any steps to procure the warrant prior to conducting the illegal search. *Id.*

Here, the prosecution cannot evade the suppression of the evidence by utilizing the inevitable discovery exception to the exclusionary rule, because it cannot show that officers were actively pursuing any lawful means at the time of the illegal conduct. While a dog sniff can be used to give probable cause to search a vehicle, *United States v. Banks*, 3 F.3d 399, 402 (11th Cir. 1993) (per curiam), at the time Stinson decided to seize the car, he knew that the canine unit would be unavailable to meet him at the gas station for some time. The officers could not have indefinitely detained Virden, who was then handcuffed in the back of a police car, at the gas station without arresting him. *See Banks*, 3 F.3d at 402 (allowing a reasonable detention to allow a canine unit to arrive); *United States v. Hardy*, 855 F.2d 753, 759 (explaining *Terry* stop must be reasonably limited in duration and scope and intrusiveness.). However, the officers did not place Virden under arrest at the gas station, and there is no evidence that they planned to bring the canine unit to the scene in a reasonable time after learning of its unavailability.

The investigative team was engaged in no lawful investigatory actions which would have led to the search of Virden's car. For the exception to apply, the prosecution needed to show that the police would have obtained the evidence "by virtue of ordinary investigations of evidence or leads already in their possession." *Brookins*, 614 F.2d at 1048. Applying this standard in *Jefferson v. Fountain*, we

11

held the victim's voice identification of the defendant was inevitable despite occurring during the defendant's illegal arrest. 382 F.3d at 1297. In that case, the police already suspected the defendant and had efforts underway to locate him, so that among other things, the victim could hear him speak. *Id.* at 1296-97. In contrast, in the present case, there is no evidence that the team was pursuing Virden or his vehicle as part of their ongoing investigation. In fact Sgt. Stinson testified that Virden was completely unknown to the investigation prior to this stop. Furthermore, it is unlikely that any other future investigation would have discovered precisely this evidence given that vehicles are by nature mobile, and Virden was alerted to the police attention by the initial stop. *See Chambers v. Maroney*, 399 U.S. 42, 51, 90 S. Ct. 1975, 1981, 26 L. Ed. 2d 419 (1970).

When the officers learned that their lawful method of obtaining the evidence–bringing the canine unit to the scene in a reasonable time frame–would be unavailable, the officers decided to take an unlawful route to obtain the desired evidence because it was expedient, rather than determine an alternate lawful route. This is precisely the misconduct which the exclusionary rule is meant to deter. Therefore, the inevitable discovery exception does not apply under these circumstances.

Therefore, we find that the district court properly suppressed the evidence

from the vehicle search. The search occurred only due to the vehicle's unconstitutional seizure. The police lacked the probable cause necessary to interfere with Virden's possessory interest to such an extent. Furthermore, the evidence obtained cannot be saved from suppression by the inevitable discovery exception because the police were not engaged in any lawful investigatory activity which would have led to the search of the car. Accordingly, we affirm the decisions of the district court.

**AFFIRMED.**