[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10200
Non-Argument Calendar

_____

D.C. Docket No. 6:18-cr-00113-CEM-DCI-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIE TOM JOHNSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 28, 2020)

Before WILLIAM PRYOR, JILL PRYOR and HULL, Circuit Judges.

PER CURIAM:

After a jury trial, Willie Johnson appeals his convictions for possession of a

firearm or ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) ("§ 922(g)(1) firearm offense"), and possession with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) ("drug-possession offense").  First, Johnson argues that the district court erroneously denied his motion to suppress.  Second, Johnson contends for the first time on appeal that his § 922(g)(1) firearm conviction must be vacated in light of Rehaif v. United States, 588 U.S. __, 139 S. Ct. 2191 (2019).  After review, we affirm.

## I.  FACTUAL BACKGROUND

### A.    Offense Conduct

On January 26, 2018, Johnson, the driver and sole occupant of a Mercedes, was parked next to a gas pump at a gas station.  Nearby law enforcement officer Corporal Jessie Bourque of the Orange County Sheriff's Office ("OCSO") was inside her marked patrol car running vehicles' license tags through a law enforcement database.  While inside her patrol car, Corporal Bourque spotted from across the street the Mercedes and its license tag, ran the tag on the law enforcement database, and discovered that the tag was stolen.  Believing the Mercedes itself to be stolen as well, Corporal Bourque and backup Deputy Timothy Parkhurst approached in marked patrol cars to conduct a "tactical park"

2

by boxing in the Mercedes.  Corporal Bourque moved her patrol car directly in front of the Mercedes and Deputy Parkhurst moved his directly behind it.

Johnson looked up at Corporal Bourque, put the Mercedes in reverse, and backed into Deputy Parkhurst's patrol car.  Johnson again made eye contact with Corporal Bourque and leaned down towards the floor of his car.  Assuming Johnson was reaching for a weapon, Corporal Bourque grabbed her firearm and pointed it at Johnson.  In response, Johnson opened his driver's side car door, got out of the car without closing the car door, and fled on foot.  Deputy Parkhurst, along with backup Deputies James Baggs and Kevin Howard-Campbell, chased after Johnson while Corporal Bourque trailed behind.

The officers caught up with Johnson several blocks from the gas station, apprehended and handcuffed him, and placed him under arrest for having a stolen license tag and resisting arrest without violence.  The officers placed Johnson in the back of Deputy Baggs' patrol vehicle.

Because the Mercedes was still running and in reverse, and because the driver's side door was still open, Deputy Baggs approached the car to put it in park.  As he was about to sit down in the driver's seat, Deputy Baggs observed the handle of a firearm sticking out from underneath the driver's seat on the floorboard.  Deputy Baggs stood back outside of the car, and he and Deputy

Parkhurst documented the firearm's location.  The officers collected the firearm and ejected the magazine, which contained a live round of ammunition.

After documenting and collecting the firearm and ammunition, the officers searched the Mercedes and found a baggie containing 111 grams of powder cocaine (netting 109.97 grams), a baggie containing 30 grams of crack cocaine (netting 26.5 grams), a cigar pack containing marijuana, a partially used box of clear Ziploc bags, a digital scale, a razor blade, and cash.  The Mercedes was towed and impounded.

During the foot chase, Johnson dropped his cell phone, which officers recovered.  After obtaining a search warrant, the officers searched the contents of Johnson's cell phone and discovered text messages referencing, for example, the sale of narcotics, quantities of narcotics, and meet-up spots.

At some point during the investigation (the record did not clarify when), the officers ran the Mercedes's vehicle identification number ("VIN") and discovered that, while the car was not stolen, Johnson was not the registered owner.  Several months later, in May 2018, Deputy Parkhurst contacted the Mercedes's owner of record, who informed that he had sold the car to an unknown person.

**B.    Indictment**

A federal grand jury charged Johnson with the § 922(g)(1) firearm offense and the drug-possession offense.  As to the § 922(g)(1) firearm offense, the

4

superseding indictment charged that Johnson, "having been previously convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . did knowingly possess . . . a firearm and ammunition."

## C.    Motion to Suppress

Johnson moved to suppress the evidence found inside the Mercedes. Johnson argued that: (1) the officers did not have probable cause or reasonable suspicion to search the car; (2) there were no exigent circumstances; (3) the search was not incident to arrest; and (4) the plain view exception did not apply.

In opposition, the government argued, inter alia, that: (1) Johnson fled, abandoned the car, and thus lacked standing to challenge the search of the car; (2) the officers had probable cause to search the car; and (3) even if they lacked probable cause, they would have conducted an inventory search of the car prior to towing and the inventory search would have inevitably revealed the contraband within the car.

At a hearing on the motion to suppress, the government called Corporal Bourque, Deputy Parkhurst, and Deputy Baggs, who testified about the above January 2018 incident and their towing decision.

For example, Corporal Bourque testified that she often towed cars after arresting the driver and the OCSO's vehicle inventory policy applied.[1]  According to Corporal Bourque, the Mercedes needed to be towed for several reasons: (1) the car needed to be moved because it was obstructing a gas pump; (2) there was no one to lawfully take possession of and remove the car, as Johnson was arrested, he would not explain whose vehicle he was driving, and the individual to whom the car was registered stated that he had sold the car to an unknown person; and (3) the car could not be lawfully driven because its license tag was stolen and had to be removed.

Corporal Bourque conceded that: (1) an inventory search occurs after an officer decides to tow a car; and (2) the search of the Mercedes was conducted before the towing decision was made.  However, she and Deputy Baggs explained that if the search had not yet been done, the officers would have had to conduct an inventory search of the car before towing it.

---

[1]That inventory policy provides that "[t]he purpose of a vehicle inventory is to protect property in law enforcement custody, verify against false claims of lost, stolen, or damaged property, and protect the deputy and the community against dangerous instrumentalities."  The policy directs that, "[a]fter a deputy calls for the tow or impound of a vehicle, he or she shall confirm it is appropriately inventoried."  Officers have authority to conduct an inventory search so long as they follow agency policy and the totality of the circumstances do not indicate that the inventory was conducted for the sole purpose of investigation.  The policy requires that an officer conducting an inventory search remove any personal property inside the car for which he has probable cause to believe may be contraband or evidence of a crime.

The district court denied Johnson's motion to suppress.  The district court found that: (1) Johnson had "opened the driver's side door and took off running, abandoning the vehicle and leaving the door open"; and (2) the officers' search of the abandoned Mercedes and their contraband discovery fell within the inevitable discovery exception to the warrant requirement.  After Johnson's arrest, the officers determined the Mercedes had to be impounded, which inevitably would have triggered an inventory search under the OCSO's procedures.  The district court also concluded that the plain view exception applied as to the firearm, which Deputy Baggs plainly saw sticking out from under the driver's side seat on the floorboard.

## D.    Jury Trial and Convictions

Johnson's first jury trial ended in a mistrial.  During retrial, Johnson and the government stipulated to the jury that, "[a]t the time of the offense alleged in Count 1[,]"—the § 922(g)(1) firearm offense—"Johnson[] had been previously convicted of a felony, a crime punishable by imprisonment for more than one year."  The trial evidence included this testimony: (1) the law enforcement officers testified about the events of January 26, 2018; (2) the owner of the license tag found on the Mercedes testified that it had been stolen; (3) a firearm expert testified that both the firearm found in the Mercedes and the ammunition inside were manufactured outside of Florida and affected or traveled in interstate

commerce; (4) a forensic chemist expert testified as to the 26.5-gram baggie of crack cocaine and the 109.97-gram baggie of powder cocaine found in the Mercedes; and (5) a digital forensic investigator testified about the messages revealed through the search of Johnson's cell phone.

On October 24, 2018, the jury found Johnson guilty of both charges.

### E.    Sentencing

Johnson's presentence investigation report ("PSI") assigned him a total offense level of 26 and a criminal history category of IV, yielding an advisory guidelines range of 92 to 115 months' imprisonment.

As to criminal history, the PSI stated that, prior to committing this § 922(g)(1) firearm offense, Johnson had, among others, three prior drug-possession convictions.[2]  First, in 2008, Johnson pled guilty to felony possession of cocaine and misdemeanor possession of 20 grams or less of marijuana in Florida state court.  He was sentenced to five days' imprisonment and 24 months' probation.  After Johnson twice violated his probation, he was resentenced to

---

[2]These three convictions were listed as Johnson's prior felony convictions supporting his § 922(g)(1) firearm offense.

concurrent terms of 366 days' imprisonment on the cocaine-possession conviction and 111 days' imprisonment on the marijuana-possession conviction.[3]

Second, in 2009, Johnson pled nolo contendere to felony cocaine possession in Florida state court and was sentenced to 210 days' imprisonment. The PSI noted that, on his date of arrest, Johnson had "reported to the Seminole County Sheriff's Office to register as a felon," but that officers arrested him on an outstanding warrant, took him into custody, and found crack cocaine in his pocket.

Third, in 2015, Johnson pled nolo contendere to felony cocaine possession in Florida state court and was sentenced to one day of imprisonment and 18 months' probation on that offense.

Johnson raised objections to the PSI, most of which are not relevant to his appeal. Notably, Johnson did not contest: (1) that his three cocaine-possession convictions were felonies; or (2) that, in 2009, he went to the sheriff's office to register as a felon before he was arrested. While Johnson contested the PSI's stated reasons for his probation violation on his 2008 cocaine-possession conviction, he did not contest the length of the sentence imposed. At sentencing,

---

[3]The PSI stated that the 366-day sentence was imposed on the marijuana-possession conviction and the 111-day sentence was imposed on the cocaine-possession conviction. However, the Florida Department of Corrections lists the 366-day sentence on the cocaine-possession conviction. See Fla. Dep't of Corrs., Corrections Offender Network: Inmate Release Information Detail – Willie T. Johnson, http://www.dc.state.fl.us/offenderSearch/detail.aspx?Page=Detail&DCNumber=X65163&TypeSearch=IR (last visited Apr. 6, 2020).

Johnson argued, however, that the longest sentence that he had ever served was one year and one day (366 days).

The district court adopted the PSI's undisputed factual statements and guidelines calculations, adopted the probation officer's position as to the disputed PSI factual statements, and determined that Johnson's total offense level of 26 and criminal history category of IV yielded the 92-to-115-month advisory guidelines range. Ultimately, the district court varied downward from the advisory guidelines range and sentenced Johnson to 72 months' total imprisonment followed by three years' supervised release.

This is Johnson's appeal.

## II. MOTION TO SUPPRESS

### A.    Abandonment of Mercedes

Ordinarily, an individual maintains a reasonable expectation of privacy in his personal property that is protected by the Fourth Amendment. United States v. Cofield, 272 F.3d 1303, 1306 (11th Cir. 2001). However, a defendant has no reasonable expectation of privacy to complain of a search or seizure of property he has voluntarily abandoned. United States v. Ramos, 12 F.3d 1019, 1022 (11th Cir. 1994). Although the defendant bears the initial burden of proving a legitimate expectation of privacy in the property searched, the government bears the burden

10

of proving the defendant's abandonment of that property.  Id. at 1023.[4]

In deciding whether the defendant abandoned his personal property, we look to the defendant's intent, which we discern from acts, statements, and other facts. United States v. Pirolli, 673 F.2d 1200, 1204 (11th Cir. 1982).  We consider the surrounding facts and circumstances existing at the time of the alleged abandonment, see id., as well as post-abandonment events that evidence "the defendant's intent to abandon the property at the previous time," United States v. Winchester, 916 F.2d 601, 604 (11th Cir. 1990).  The "critical inquiry" is whether Johnson "voluntarily discarded, left behind, or otherwise relinquished his interest in [his car] so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search."  Ramos, 12 F.3d at 1022 (quotation marks and emphasis omitted).

In applying the abandonment doctrine in the automobile context, this Court has held that a defendant who abandons his car to flee from law enforcement officers has no reasonable expectation of privacy with respect to the car and thereby forfeits his right to Fourth Amendment protection in it.  See United States

---

[4]In reviewing the denial of a motion to suppress evidence, this Court reviews the district court's factual findings for clear error and its legal rulings de novo.  United States v. Laist, 702 F.3d 608, 612 (11th Cir. 2012).  We construe the facts in the light most favorable to the party that prevailed below, here, the government.  Id.  We will conclude that the district court clearly erred in making its factual findings only if "our review of the record leaves us with the definite and firm conviction that a mistake has been committed."  United States v. White, 335 F.3d 1314, 1319 (11th Cir. 2003) (quotation marks omitted).

v. Edwards, 441 F.2d 749, 751-53 (5th Cir. 1971).[5]  In Edwards, the defendant

abandoned his car when, after leading police on a high-speed chase, he stopped,

"jumped from the car," and left the car "to the police, on a public highway, with

the engine running, keys in the ignition, lights on, and fled on foot."  Id. at 750-51;

see also United States v. Williams, 569 F.2d 823, 824-26 (5th Cir. 1978) (holding a

defendant abandoned his unlocked trailer and its contents when he unhooked the

trailer from his truck, left it in a parking area, and drove away while being pursued

by federal agents).  Historically, cars have received lesser Fourth Amendment

protection because there is a "diminished expectation of privacy" in them.  See

United States v. Holland, 740 F.2d 878, 880 (11th Cir. 1984).

Here, the district court did not clearly err in finding that Johnson "opened

the driver's side door and took off running, abandoning the vehicle and leaving the

door open."  Johnson does not contest this finding.  Moreover, the record shows

that, once Johnson realized that officers in marked patrol cars were pursuing him,

he put the Mercedes in reverse in an unsuccessful attempt to escape while still

inside the car, then got out of the Mercedes while it was still in reverse, left the car

on and the car door open, and fled on foot from the officers for several blocks.

Under the circumstances, Johnson's actions showed that he "relinquished his

---

[5]This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

12

interest in [the Mercedes] so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search."  See Ramos, 12 F.3d at 1022 (quotation marks and emphasis omitted); Pirolli, 673 F.2d at 1204. Just like the drivers in Edwards and Williams, Johnson abandoned the Mercedes and its contents and thereby forfeited his right to Fourth Amendment protection in them.  See Williams, 569 F.2d at 824-26; Edwards, 441 F.2d at 751-53.

Accordingly, the district court properly denied Johnson's motion to suppress the contraband discovered in the Mercedes.  See United States v. Noriega, 676 F.3d 1252, 1260 (11th Cir. 2012) ("We can . . . affirm a district court's denial of a motion to suppress on any ground supported by the record.").[6]

## B.    Inevitable Discovery Exception

Alternatively, as the district court found, the discovery of the contraband inside the Mercedes was inevitable because the officers were already investigating the car's stolen tag and ownership and determined that the car had to be towed and

---

[6]In this Circuit, there is some tension about whether the abandonment of personal property raises a jurisdictional issue that implicates Article III standing, see United States v. Sparks, 806 F.3d 1323, 1339-42 (11th Cir. 2015), or raises a non-jurisdictional, merits-based inquiry under substantive Fourth Amendment doctrine, having nothing to do with Article III standing, see United States v. Ross, 941 F.3d 1058, 1065 (11th Cir. 2019), reh'g en banc granted and opinion vacated by 953 F.3d 744 (11th Cir. 2020); Presley v. United States, 895 F.3d 1284, 1290 (11th Cir. 2018).  We have granted rehearing en banc in Ross specifically to address this tension and whether Sparks should be overruled to the extent that it holds that a suspect's abandonment of an item implicates both Fourth Amendment and Article III standing.  However, we need not decide that issue because the district court's denial of Johnson's motion to suppress is due to be affirmed in any event.

impounded, which would have triggered an inventory search and revealed its contents in any event. Generally, unless there is consent, law enforcement officers must obtain a warrant supported by probable cause to justify a search under the Fourth Amendment. United States v. Magluta, 418 F.3d 1166, 1182 (11th Cir. 2005). When evidence is obtained in violation of the Fourth Amendment, it ordinarily must be suppressed. United States v. Jordan, 635 F.3d 1181, 1185 (11th Cir. 2011). Nevertheless, there are exceptions. United States v. Virden, 488 F.3d 1317, 1322 (11th Cir. 2007).

Under the inevitable discovery exception to the exclusionary rule, evidence obtained by unlawful means will still be admissible if the prosecution establishes by a preponderance of the evidence that the subject items ultimately would have been discovered by lawful means. Id. The government must go beyond law enforcement's mere assertion that the items would have been inevitably discovered and instead show that "the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct." Id. (quotation marks omitted and emphasis in original).

Here, the district court did not clearly err in finding that the officers had multiple valid reasons for towing and impounding the Mercedes. Importantly, the Mercedes was improperly parked next to a gas pump; the officers were investigating whether the Mercedes was stolen; there was no one to lawfully take

14

possession of and remove the car because driver Johnson was arrested for having a stolen license tag; and the officers had not yet located the owner of the car.

Corporal Bourque also testified that, under the OCSO's inventory search policy, she would have been required to conduct an inventory search of the Mercedes before towing it. Moreover, given the stolen tag suggesting the car was stolen and the inability to locate the owner of the car, the totality of the circumstances shows that the lawful means which made the discovery inevitable were being actively pursued prior to the search.

Johnson argues that the fact that none of the officers stated during their search of the Mercedes that they intended to impound it demonstrates that it was truly an investigatory search and that they later falsely claimed it was an inventory search. Even if, at the time of the search of the Mercedes, the officers were still investigating and not yet inventorying, the officers' testimonies still show that the lawful means nevertheless was "being actively pursued prior to the occurrence of the illegal conduct." See Virden, 488 F.3d at 1322.

Our decision in United States v. Shawnton Johnson is spot on. 777 F.3d 1270 (11th Cir. 2015). In Shawnton Johnson, a patrolling officer searched a car's license plate number on his computer, discovered that the owner was deceased, and stopped the car when it failed to signal a turn. Id. at 1272. When asked for his driver's license, the driver admitted that it was suspended, which the officer

15

confirmed.  Id. at 1272-73.  After learning that the driver's license had been suspended six times, the officer decided to arrest the driver.  Id.  However, before arresting the driver, the officer saw an item wrapped in cloth, removed the cloth, and discovered a sawed-off shotgun.  Id. at 1273.  The officer arrested the driver and conducted a detailed inventory search of the car.  Id.  After unsuccessfully trying to find another registered owner, the officer completed a vehicle storage receipt and requested that the car be towed.  Id.

This Court held that the officer's investigation into the car's ownership that began before, and was independent of, the illegal search of the car was the "lawful means which made discovery inevitable."  Id. at 1274-75, 1277 (quotation marks omitted).  We determined that, even though the officer had not yet decided to impound the car when he illegally searched it, the record showed that the officer nevertheless would have towed and impounded the car, and discovered the shotgun through a subsequent inventory search, because: (1) the car was registered to a deceased person; (2) the driver was being arrested for driving the car with a suspended license; (3) there was no other registered driver to whom the car could be turned over; and (4) as the officer had testified, police were required to make vehicle disposition decisions based on ownership of the vehicle.  Id. at 1274, 1277.  We reasoned that "[t]he district court could have reasonably inferred from [the officer's] testimony and common sense that he was acting on the basis of a police

16

policy that ownerless [cars] should not be left on the side of the road." Id. at 1278; see also United States v. Williams, 936 F.2d 1243, 1248 (11th Cir. 1991) (upholding an inventory search where the district court had indicated that the police department's policy permitted impoundment under the circumstances of that case and that the defendant had not countered that assertion).

Thus, this Court concluded, the officer's "active pursuit of the ordinary investigation of the evidence already in his possession"—regarding the ownership of the car—"would have led him to the shotgun." Shawnton Johnson, 777 F.3d at 1274-75 (quotation marks omitted and alteration accepted). Notably, "nothing of substance . . . would have changed" if the illegal search was subtracted "from the factual picture in this case." Id. at 1277.

Like the officer in Shawnton Johnson, Corporal Bourque's investigation into the ownership of the Mercedes began before the officers searched inside the car— when Corporal Bourque ran the Mercedes's license tag in the law enforcement database and discovered that it was stolen, which caused her to believe the car itself might also be stolen. See id. at 1274-75, 1277. That investigation continued, as Corporal Bourque testified that Johnson did not explain who owned the car, that the officers searched the car's VIN and identified the car's registered owner, and that the officers spoke to the registered owner who said that he sold the car to an unknown person.

17

Accordingly, even though the officers searched the Mercedes before making the decision to tow it, their "active pursuit of the ordinary investigation of the evidence already in [their] possession"—regarding the ownership of the Mercedes—"would have led [them] to the [contraband]." See id. at 1274-75. Because the officers would have conducted an inventory search and inevitably discovered the contraband, "nothing of substance . . . would have changed" if the illegal search was subtracted "from the factual picture in this case." See id. at 1277.[7]

## C.    Alleged Seizure of Johnson's Person at the Gas Station

Next, Johnson argues—as a free-standing challenge brought for the first time on appeal—that Corporal Bourque and Deputy Parkhurst unreasonably seized Johnson at the gas station when they tactically boxed the Mercedes in without a warrant, probable cause, or reasonable suspicion. Because Johnson did not raise this argument in the district court, we review his seizure claim for plain error.[8]

---

[7]On appeal, the government also contends that the officers' warrantless search of the Mercedes was lawful under both the automobile exception and the plain view exception to the warrant requirement. Because we affirm on the other grounds listed above, we need not address the applicability of these additional exceptions.

[8]When a party fails to timely object in the district court, we review for plain error only. United States v. Hernandez, 906 F.3d 1367, 1370 (11th Cir. 2018). Under the plain-error standard, we will not vacate a judgment unless the party demonstrates (1) an error, (2) that is plain, and the error both (3) affected the defendant's substantial rights, and (4) seriously affected the fairness of the judicial proceedings. Id. A defendant cannot prevail on plain-error review "where there is no precedent from the Supreme Court or this Court directly resolving" the issue in his favor. United States v. Lange, 862 F.3d 1290, 1296 (11th Cir. 2017) (quotation marks omitted).

A person is "seized" for Fourth Amendment purposes when his "cooperation is induced by coercive means or if a reasonable person would not feel free to terminate the encounter." Jordan, 635 F.3d at 1186 (quotation marks omitted). We consider several factors in determining whether a seizure has occurred, such as whether the defendant's path is blocked or impeded by officers, the number of officers present, and whether the officers displayed weapons. Id. However, the ultimate question is whether the defendant's "freedom of movement was restrained by physical force or by submission to a show of authority." Id. For example, "[w]hen a suspect flees from the police, he is not submitting to their authority and therefore is not seized." Id.

Notably here, despite Corporal Bourque and Deputy Parkhurst boxing in the Mercedes and drawing a firearm, Johnson immediately fled from the officers on foot. By fleeing, Johnson did not submit to their show of authority at that point and therefore was not yet seized. See id. It was not until after Johnson fled from the Mercedes, and ran several blocks away from the gas station, that he was physically detained and seized by officers. See id. Under the circumstances, the officers' tactical park to box in the Mercedes did not constitute a "seizure" of Johnson for Fourth Amendment purposes. Johnson has not pointed to any binding precedent from the Supreme Court or this Court holding otherwise. See United States v. Lange, 862 F.3d 1290, 1296 (11th Cir. 2017). There was no error—plain

19

or otherwise—in this regard.[9]

## D.    Alleged Search of Mercedes's License Tag

Johnson also argues—for the first time on appeal—that Corporal Bourque unreasonably searched the Mercedes's license tag by running it through the law enforcement database without a warrant or any articulable and reasonable suspicion to search the tag. Again, we review this issue for plain error only. See United States v. Hernandez, 906 F.3d 1367, 1370 (11th Cir. 2018).

It is well-settled that a motorist can have no reasonable expectation of privacy in the license tag information he is required by law to display in plain view. In fact, "[t]he exterior of a car, of course, is thrust into the public eye, and thus to examine it does not constitute a 'search.'" See New York v. Class, 475 U.S. 106, 114, 106 S. Ct. 960, 966 (1986). Specifically, "it is unreasonable to have an expectation of privacy in an object required by law to be located in a place ordinarily in plain view from the exterior of the automobile." Id. at 114, 106 S. Ct. at 966 (considering, as "the object at issue," "an identification number behind the transparent windshield of an automobile driven upon the public roads").

Johnson nevertheless argues that Class is distinguishable because, here,

---

[9]To the extent that Johnson attempts to argue that any abandonment of the Mercedes was not "voluntary" because the officers unreasonably seized him by boxing the Mercedes in, the argument fails for the same reason. See Jordan, 635 F.3d at 1186; see also Pirolli, 673 F.2d at 1204 (explaining that, when a defendant abandons an item during pursuit in an effort to avoid being caught with the item, his abandonment is not rendered involuntary or the product of police misconduct).

20

when Corporal Bourque searched Johnson's license tag, Johnson was parked at a "private[ly]" owned gas station and was not traveling on a public road. This argument ignores that the gas station was open to the public and Johnson was parked in a public area of the gas station. Further, Johnson points to no binding precedent from either the Supreme Court or this Court holding that a motorist— who is parked in a gas station open to the public—has a reasonable expectation of privacy in his license tag information that is displayed in plain view. See Lange, 862 F.3d at 1296. Johnson has shown no plain error as to the license tag.

All in all, the district court did not clearly err in its factual findings nor did it err, plainly or otherwise, in denying Johnson's motion to suppress.

## III. REHAIF CHALLENGE

In a supplemental brief, Johnson argues that his conviction for the § 922(g)(1) firearm offense must be vacated in light of the Supreme Court's decision in Rehaif v. United States, 588 U.S. __, 139 S. Ct. 2191 (2019), because his indictment did not charge, the jury was not instructed, and the government did not prove beyond a reasonable doubt that Johnson knew he was a felon at the time he possessed the firearm.[10] As Johnson concedes, this challenge—raised for the

---

[10]The district court instructed the jury that Johnson could be found guilty of the § 922(g)(1) firearm offense only if the following facts were proved beyond a reasonable doubt: (1) "[Johnson] knowingly possessed a firearm or ammunition in or affecting interstate or foreign commerce"; and (2) "before possessing the firearm or ammunition, [Johnson] had been convicted of a felony, a crime punishable by imprisonment for more than one year."

21

first time on appeal—is reviewable for plain error only. See Hernandez, 906 F.3d at 1370.

In Rehaif, the Supreme Court held that in prosecutions under §§ 922(g) and 924(a)(2), the government must prove—as an element of the crime—that when the defendant possessed the firearm, "he knew he belonged to the relevant category of persons barred from possessing a firearm," such as his status as a convicted felon. See 588 U.S. at __, 139 S. Ct. at 2194-97, 2200.

Here, Rehaif makes plain that the district court erred when it did not require the indictment to charge, the jury to be instructed, and the government to prove beyond a reasonable doubt that Johnson knew he was a felon at the time he possessed the firearm. See id. at __, 139 S. Ct. at 2194-97, 2200. Therefore, as the government concedes in this direct appeal case, Johnson has shown error that is plain. However, Johnson's Rehaif challenge fails because he cannot show that the district court's error affected his substantial rights.

To show that the Rehaif error affected Johnson's substantial rights, he must establish "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." Molina-Martinez v. United States, 578 U.S. __, __, 136 S. Ct. 1338, 1343 (2016) (quotation marks omitted). In making this determination, we consider the whole record. United States v. Reed, 941 F.3d 1018, 1021 (11th Cir. 2019).

22

Here, the record as a whole demonstrates that Johnson knew of his status as a convicted felon when he possessed the firearm in the instant 2018 offense. First, at trial, Johnson stipulated to the fact that he "had been previously convicted of a felony, a crime punishable by imprisonment for more than one year."

Then, at sentencing, while Johnson objected to the PSI's factual narratives surrounding some of his convictions, he did not object to the convictions themselves. Namely, the unobjected-to facts in the PSI showed that he had three convictions for possession of cocaine, which Johnson concedes is a felony under Florida law. See Fla. Stat. §§ 893.13(1)(a)(1), 893.03(2)(a)(4). Nor did Johnson object to the PSI's indication that he ultimately served a total of 366 days' imprisonment on his 2008 conviction. In fact, he admitted at the sentencing hearing that his longest sentence had been one year and one day. Johnson did not object to the PSI fact that, on the date of his 2009 cocaine-possession arrest, he reported to the sheriff's office "to register as a felon." Under these circumstances, a reasonable jury could "have inferred that [Johnson] knew he was a felon" when he possessed the firearm in the instant § 922(g)(1) firearm offense. See Reed, 941 F.3d at 1022.

While Johnson points out that his stipulation to being a convicted felon was not a stipulation that he had knowledge of his felon status at the time of the firearm possession, it was still a fact for the jury to consider in determining the knowledge

23

element of the offense.  See id.  Johnson also argues that the record "might support an inference that"—given his background, intelligence level, and mental health issues—"[he] may not appreciate nor fully understand the collateral consequences of his prior criminal history[.]"  Even if this is the case, Rehaif only requires the government to prove that Johnson had knowledge of his status as a convicted felon, not that he knew that his firearm possession, as a convicted felon, was in fact unlawful.  See Rehaif, 588 U.S. at __, 139 S. Ct. at 2194-97, 2200.

Because Johnson cannot show a reasonable probability that, but for the Rehaif error, the outcome of his trial would have been different, he cannot show that the error affected his substantial rights.  See Molina-Martinez, 578 U.S. at __, 126 S. Ct. at 1343; Reed, 941 F.3d at 1021-22.  Johnson has failed to meet the plain error standard.

### IV. CONCLUSION

In sum, Johnson has not shown that the district court erred, plainly or otherwise, in denying his motion to suppress or that the district court plainly erred under Rehaif.  Thus, we affirm his convictions.[11]

**AFFIRMED.**

---

[11]In this direct appeal, Johnson does not challenge his 72-month sentence.